[Civ. No. 4222. Second Appellate District, Division One.—March 18, 1925.]

# THE ADAMS-CAMPBELL COMPANY (a Corporation), Respondent, v. H. R. JONES et al., Appellants.

[1] CONTRACTS—ACTION FOR MONEY—FINDINGS OF SPECIFIC FACTS—AMOUNT OWING—CONCLUSION OF LAW.—In an action to recover a balance alleged to be due under a contract for the manufacture by plaintiff for defendants of certain stropping machines, in which the defendants counterclaimed to recover the payments made by them to plaintiff under the contract, if the specific facts found by the court entitle defendants to a judgment in their favor, a further so-called finding (after a finding in favor of defendants as to three minor items) that "plaintiff owes defendants no further sums" is not a finding of fact at all, but a mere conclusion of law, although stated as a finding of fact.

[2] ID.—RIGHT TO RECOVER MONEY PAID—CONCLUSION OF LAW.—In such action, in view of the specific facts found by the court, a finding as a conclusion of law that "defendants are not entitled to payment" of the sum paid by them to plaintiff is not a finding of fact and cannot be considered in determining whether the judgment is supported by the findings.

[3] ID.—JUDGMENT—CONSTRUCTION OF FINDINGS.—The rule that findings must be construed, if possible, to support the judgment does not go to the extent of permitting the rejection of specific facts found by the court and the acceptance of mere conclusions of law in direct conflict with these facts in order to sustain the judgment.

[4] ID.—BREACH—ELECTION OF REMEDIES—RESCISSION.—When plaintiff breached the contract for the manufacture and delivery of the stroppers, defendants had two remedies, i. e., to rescind the contract and sue for the money paid thereon, or to sue for damages for breach of the contract, and where defendants pursued the latter remedy it was necessary for them in such action to allege or prove a rescission of the contract.

[5] ID.—IMPLIED WARRANTY OF FITNESS—DEFECTS DUE TO BREACH OF CONTRACT.—The trial court having found that the defect in the stropping machines manufactured by plaintiff was not due to any imperfect dies furnished by defendants, but was caused by the improper substitution by plaintiff of brass instead of steel in the manufacture of certain parts thereof as provided in the contract, the legal principle that, where one person manufactures an article according to specifications or instructions furnished by another, there is no implied warrant that they will answer the particular

purpose for which the latter intends to use them, can have no application.

[6] ID.—BREACH — FINDINGS—JUDGMENT.—In this action to recover a balance alleged to be due under a contract for the manufacture by plaintiff for defendants of certain stropping machines, in which the defendants filed a counterclaim to recover the payments made by them to plaintiff under the contract, in view of the findings showing a breach of the contract by plaintiff, the trial court, in addition to finding that plaintiff was not · entitled to recover the balance unpaid under the contract, should have gone further and rendered judgment upon the findings in favor of defendants for the repayment of the amounts paid by them on the contract.

(1) 33 C. J., p. 1170, n. 37; 38 Cyc., p. 1979, n. 53, p. 1980, n. 54. (2) 38 Cyc., p. 1980, n. 54, p. 1986, n. 83. (3) 33 C. J., p. 1171, n. 46 New. (4) 35 Cyc., p. 617, n. 36, p. 621, n. 79 New. (5) 35 Cyc., p. 403, n. 47. (6) 35 Cyc., p. 635, n. 38 New.

APPEAL from judgment of the Superior Court of Los Angeles County. Merle J. Rogers, Judge. Reversed.

The facts are stated in the opinion of the court.

Lloyd Wright for Appellants.

Pierce, Critchlow & Barrette and Benj. M. Stansbury for Respondent.

CURTIS, J.—Plaintiff and defendants entered into a written contract on the seventeenth day of March, 1920, whereby plaintiff agreed to furnish the material and manufacture for the defendants 5,000 razor-stropping machines at the price of 77 cents each or $3,850 for the whole number. Said machines were to be made in accordance with the model furnished plaintiff by defendants and were to be paid for, one-fourth of the purchase price at the date of the agreement, one-fourth thereof when plaintiff had the material for the manufacture of said machines in its shop, and had actually commenced work on their manufacture, and the balance of the purchase price to be paid *pro rata* on the delivery of the machines. Upon the signing of the contract defendants paid to plaintiff the sum of $1,000, which amount was slightly in excess of the first payment called for in the agreement. On June 11th following, upon the statement

of plaintiff that it had on hand in its shop the materials for the machines and had actually begun work upon their manufacture, defendants paid to plaintiff a further sum of $1,000 as the second payment under said agreement. At various times thereafter and beginning about July 1, 1920, the plaintiff delivered to defendants a number of said machines as manufactured by it, and in each case the machines were entirely unsatisfactory and not in accordance with the written contract between the parties, and were not fit for sharpening razors or razor blades. On each of said occasions defendants returned said machines to plaintiff, and called the attention of plaintiff to the defects therein, and on each of said occasions plaintiff admitted that said machines were not properly made and did not meet the requirements of said contract, and promised and represented to defendants that it would produce and manufacture perfect machines. However, plaintiff never did deliver to the defendants any machines that met the requirements of said contract. None of the machines manufactured by plaintiff, under said contract for the defendants, was efficient or fit for the purpose or work for which they were intended, and all of said machines so manufactured were useless. On about September 15, 1920, plaintiff verbally offered to deliver to defendants 5,000 machines, but plaintiff was not then, nor at any other time, able to tender, nor did it tender, said 5,000 machines or any substantial number of machines which met the requirements of the contract under which they were to be manufactured and delivered.

The court found all the above facts to be true, and also that defendants demanded payment of said sum of $2,000, but that plaintiff failed and refused to pay the same or any part thereof. It further appears that upon defendants' refusal to accept the machines which plaintiff attempted to tender them, plaintiff instituted this action to recover of defendants the contract price of said 5,000 machines, less the sum of $2,000 paid thereon. The defendants in said action filed an answer denying certain allegations of the complaint, and also filed a counterclaim setting forth in effect all the above-stated facts, which the court found to be true. The court rendered judgment in favor of plaintiff for the sum of $120.26 for certain articles not connected with the above-mentioned contract, but denied any recovery in favor

of plaintiff on said contract, and also denied defendant's right to recover from plaintiff the $2,000 paid plaintiff on said contract. From this judgment defendants appeal on the judgment-roll, and contend that upon the facts found by the court they are entitled to judgment against plaintiff for the amount paid by them on the contract, to wit, the sum of $2,000.

[1] In defense of the judgment respondent calls our attention to the fact that in addition to the facts above stated there is a finding as follows: "It is true that by reason of the nonpayment of said sums and in accordance with the foregoing findings, the plaintiff owes defendants the sum of $223.00 for springs, the sum of $32.48 for the name plate, and $250.00 for the dies, but plaintiff owes defendants no further sums." Upon this appeal we are not concerned with the three items of $223, $32.48, and $250 mentioned in the foregoing finding, but only with the following portion thereof: "but plaintiff owes defendants no further sums." It is contended by respondent that this is a finding of fact and that the same supports the judgment denying any relief to defendants. If the specific facts found by the court entitle appellants to a judgment in their favor, the further so-called finding that "plaintiff owes defendants no further sums" would not justify the court in refusing such a judgment. This was not a finding of fact at all, but in view of the other facts found, was a mere conclusion of law, although stated as a finding of fact. (*Gay* v. *Moss,* 34 Cal. 125.) It could not, therefore, in any sense be relied upon to support the judgment. [2] The court also found as a conclusion of law that "defendants are not entitled to payment of the $2,000.00 from the plaintiff." Respondent claims that this is a finding of fact although "the court inadvertently called it a conclusion of law." We agree with the trial court in designating this as a conclusion of law. As such, like the other conclusion of law we have already discussed, it cannot be considered in determining whether the judgment is supported by the findings. [3] It is true that the rule is well established that findings must be construed if possible so as to support the judgment, but this rule does not go to the extent of permitting the rejection of specific facts found by the court, and the acceptance of

mere conclusions of law in direct conflict with these facts in order to sustain the judgment.

[4] Respondent further argues that the judgment denying any recovery to appellants in so far as said sum of $2,000 is concerned must stand, for the reason that there is no finding that appellants ever rescinded the contract. There is no merit in this contention for the reason that the counter-claim of appellants was not based upon any rescission of the contract. On the other hand, it stated a cause of action for damages for breach of the contract. Upon the breach of the contract by respondent appellants had the election of at least two remedies. They could rescind the contract and sue for the money paid thereon, or they could sue for damages for breach of the contract. They pursued the latter remedy and it was not necessary for them in such an action to allege or prove a rescission of the contract.

The contract contains a provision that the appellants were "to furnish all the dies necessary for the manufacture of the above (machines), which dies we (respondent) are to keep in repair at your expense." The court found: "That after the execution of said contract difficulty arose in securing materials and plaintiff contended it could not procure steel for the side or end plates of the razor stropping machines and a portion of the razor holding unit; that thereupon plaintiff represented to defendants that hard brass was as efficient and suitable as steel for said parts of said razor stropping machines, whereupon the defendants disclaimed any knowledge of the suitability of brass for said parts, and stated to plaintiff that they did not have any knowledge whatever as to the quality or properties of such brass, or as to whether it would do as well or better than steel; that thereupon plaintiff substituted half hard brass for steel; . . .

"That the dies so furnished by defendants to plaintiff for the manufacture of said razor stropping machines had been previously used in the manufacture of a considerable number of said machines, which said machines were in all respects successful in their operation, although there was a slight mathematical variation in a few of the dies. The court finds that none of the razor stropping machines manufactured by plaintiff under said contract for defendants were efficient or fit for the purpose or work for which they were intended; only about 25% of them worked at all even to start with,

and those that did work became out of alignment and useless in a very short time. The court further finds that all of said razor stropping machines were useless; some to start with, because they were not made in proper alignment; the others, in cases where they were made in proper alignment, became useless and worthless after a short use, due to the fact that plaintiff substituted half hard brass for steel in the side or end plates of the razor stropping machines it undertook to manufacture under the contract; that the brass plaintiff used for said side plates was not sufficiently rigid to withstand the use and work for which the machines were intended; that said brass was too soft, or so soft that the places where it was joined together to other parts of the machines developed play upon use, thus causing the machines to become out of alignment upon use so that a razor could not be sharpened uniformly or smoothly throughout the length of its blade.''

It is now contended by respondent in support of the judgment that the findings of the court indicate that the imperfections in the dies were partly responsible for the improper alignment in the machines manufactured by respondent. We do not so construe the findings. While the court found that there was a ''slight mathematical variation in a few of the dies,'' it does not find that this defect in the dies was responsible for the imperfect machines. The court, however, does find that all of the machines manufactured by the respondent were useless. ''Some to start with, because they were not made in proper alignment; the others, in cases where they were made in proper alignment, became useless and worthless after a short use, due to the fact that plaintiff substituted half hard brass for steel in the side or end plates of the razor stropping machines it undertook to manufacture under the contract.'' It is apparent from these findings, that the imperfection in the machines manufactured was due not so much to any variation in the dies furnished by appellants, as it was to the substitution by respondent of brass for steel in the sides or end plates of the machines. Even if we assume that the cause of the defective alignment in those machines which were useless ''to start with'' was due to the imperfection in the dies furnished by appellants, an assumption not warranted by the findings, however, yet it also appears from the findings that in the manufacture of all

the machines made by respondent, the latter used brass instead of steel, and that machines so made soon became out of alignment, because the rigidity of the brass was not sufficient to withstand the use and work for which the machines were intended. The only conclusion, therefore, that can be drawn from these findings is that, had all the machines when manufactured been in proper alignment, they would by the use for which they were intended soon have become out of alignment on account of the defective material used by respondent in their manufacture. As we construe the findings, therefore, the defect in the machines manufactured was not due to any imperfect dies furnished by appellants, but was caused by the improper substitution by respondent of brass instead of steel in the manufacture of certain parts thereof as provided by the contract.

[5] Finally, respondent contends that as the machines were manufactured according to specifications or instructions furnished by appellants, there was no implied warranty that they would answer the particular purpose for which appellants intended to use them. In support of this proposition respondent cites the following authorities: *Bancroft* v. *San Francisco Tool Co.,* 120 Cal. 228 [52 Pac. 496]; *Manniz* v. *Tryon,* 152 Cal. 31, 40 [91 Pac. 983]; *Stevens* v. *Parkford,* 48 Cal. App. 131 [191 Pac. 699]. There is no question of the soundness of the legal principle advanced by respondent and supported by these authorities, but we do not think that this principle has any application to the case before us. According to the contract between the parties to the action, the machines which respondent agreed to manufacture for appellants were to be made in accordance with the knocked-down model furnished by appellants. This model, as we understand the findings, called for the use of steel in the manufacture of certain parts of the machines. Had respondent, in the manufacture of the machines, complied with all the terms of the contract, including that providing for the use of steel in those parts as shown by the model, then it would not have been responsible to appellant had the machines failed to properly do the work for which they were intended by appellants. For in such a case appellants would have received precisely what they contracted for, and there would have been no warranty, express or implied, on respondent's part that the machines would an-

swer the particular purpose for which appellants intended to use them. The above cases cited by respondent amply support this proposition, but the trouble with respondent's position is that the findings of the court show that it failed to manufacture the machines as called for by its contract with appellants.  [6]  The right to recover on their counterclaim was not based by appellants on any warranty that the machines, if properly made, would be fit for the purpose intended, but upon respondent's total failure to manufacture the machines in accordance with the terms of the contract. The court found in appellants' favor upon this issue, and very properly, we think, held that respondent was not entitled to recover the balance unpaid on the contract. We think, however, that the court should have gone further and rendered judgment upon these findings in favor of appellants for the repayment of the amounts paid by them on the contract.

Judgment is reversed, with directions to the trial court to enter judgment in favor of appellants for the sum of $2,000, together with legal interest on $1,000 of said sum from March 18, 1920, and on $1,000 of said sum from June 11, 1920; less the sum of $47.86, being the difference between the said sum of $120.26, found by said court to be due respondent from appellants, and defendants' costs as taxed by the trial court.

Conrey, P. J., and Houser, J., concurred.