[Civ. No. 13265. First Dist., Div. One. Jan. 22, 1947.]

ARCHIE I. BLOCK, Respondent, v. D. W. NICHOLSON CORPORATION (a Corporation) et al., Appellants.

J. W. Ehrlich, Roy A. Sharff, John F. O'Sullivan, McKee, Tasheira & Wahrhaftig, Ridley Stone and J. D. Cooper for Appellants.

Dinkelspiel & Dinkelspiel, Carlos J. Badger and Harold A. Block for Respondent.

WARD, J.—This is an appeal from a judgment in favor of plaintiff against The John J. Moore Co., hereinafter referred to as the Moore Company, and D. W. Nicholson Corporation, hereafter referred to as the Nicholson Corporation, jointly

and severally, in the sum of $2,500, with interest from August 4, 1943, and costs; and from the order of said court denying defendants' motion for a new trial.

Moore Company and Nicholson Corporation, as joint adventurers, were successful bidders for the construction of the Port of Oakland cantonment, a War Department project. They furnished the necessary "bid bond" but had difficulty procuring a "performance bond." Maxwell Reid, the president of Moore Company, and apparently the manager for the joint venture, on or about March 27, 1942, requested respondent, Archie Block, real estate and insurance broker, to attempt to procure the performance bond. The influence of Roy Block, respondent's brother, who was a friend and neighbor of Reid, appears to have been an instrumental factor in Reid's selection of respondent. For successful performance, Block was told by Reid that he would be Reid's insurance broker. Within a few days thereafter, Reid asked Block to cease making contacts with bonding companies and to devote his efforts to obtaining additional financing, since the bonding companies had required this before they would issue a bond. Moore Company's broker at that time was one Ray W. Jones. A year or more before the Oakland cantonment job, respondent went over the Moore Company's insurance policies and showed Reid that there were certain savings that could be effected if he handled the insurance. Reid explained that Jones' family connection with Moore Company made it impossible for him to cut respondent in on Moore Company's insurance.

About March 30, 1942, Reid informed respondent that Nicholson's insurance broker, Moller-Fischer Company, would share in the commissions from insurance on the Oakland cantonment job. Respondent and Moller-Fischer Company wrote the insurance, jointly, from that date. Respondent testified that when he was told that he would have to share the insurance Reid said that "he [Reid] would always see that I [Block] was taken care of all right." April 7, 1942, respondent induced a former client, Mrs. Conrad Sandeen, to advance $50,000 to the appellants and to become an equal co-venturer with them. The "Articles of Joint Venture" signed by Conrad Sandeen provided that the $50,000 was for the fulfillment of the Oakland cantonment job "and for no other purpose." This investment enabled an outside broker to procure the performance bond. May 5, 1942, Reid requested that Moore Company's broker share in the commissions. Plaintiff's

exhibit No. 3 was then drawn: "To Whom It May Concern: This is to confirm our understanding with the Ray W. Jones Company, the Moller-Fischer Company, and Archie I. Block, jointly, that they are to act as our brokers in negotiating any future bonds and insurance in connection with *any additional work* that we may procure *from the War Department.* D. W. NICHOLSON CORPORATION, THE JOHN J. MOORE Co., (Signed) MAXWELL REID, Maxwell Reid." (Italics added.) There is evidence that the words "*any additional work*" referred to War Department construction jobs at the Oakland port and not elsewhere. According to respondent's testimony, Reid again said that "he would see that I lost nothing, lost no commissions, over it."

A post exchange building, an infirmary, and a guest house were constructed as additional construction jobs at the Oakland port. On all of these, Block, Moller-Fischer Company and Jones handled the insurance and shared in the profits therefrom. Up to August, 1943, respondent received commissions amounting to $1,155.81 plus $250 from the company which procured the performance bond, making a total of $1,405.81. By July, 1942, all insurance on the Oakland cantonment job had been written. From May, 1942, to August, 1943, respondent continually solicited Reid for the insurance on jobs at Vallejo and San Rafael in which Moore Company and Nicholson Corporation participated but not Mrs. Sandeen. During this time Block did not demand any compensation for procuring Mrs. Sandeen's investment. In August, 1943, respondent told Reid that he felt he was entitled to extra compensation for procuring the Sandeen investment. Reid told him to present a bill. August 4, 1943, respondent presented a statement for $2,500 directed to Reid, Moore Company and Nicholson Corporation. Reid asked to have his name removed. October 1, 1943, respondent presented a statement for $2,500 directed to Moore Company and Nicholson corporation. This figure represents 5 per cent of the $50,000 advanced by Sandeen and is based on real estate brokerage schedules.

Nicholson Corporation's position is that it had no obligation to meet; Sandeen was advised by respondent that as she was his client she was not to pay anything, and no agreement being reached, Reid told respondent that he would have to sue to get the $2,500.

The complaint, which was filed April, 1944, joined Moore Company, Nicholson Corporation and Reid as defendants.

Four causes of action are alleged. The first pleads an express contract—in effect that defendants "agreed to pay to plaintiff the reasonable value of his services rendered by him" in procuring the investment of $50,000 by Sandeen and that $2,500 is the reasonable value of the services. The second cause, in the form of a common count, alleged that defendants became indebted to Block in the amount of $2,500 for services rendered at their request. The third, also in the form of a common count, alleged that defendants became indebted to Block in the sum of $2,500 upon an account for services rendered. The fourth cause, likewise in the form of a common count, alleged that defendants became indebted to Block in the sum of $2,500 upon an account stated. The bill of particulars and the amended bill of particulars indicate that plaintiff based his right to $2,500 upon having induced Sandeen to advance $50,000 to defendants on or about April 7, 1942. Defendants denied any indebtedness of $2,500.

Instead of making direct findings of fact on the issues, the trial court found in general terms that the allegations of the complaint were true and that the allegations of the answers were untrue. As a conclusion of law, Moore Company and Nicholson Corporation were found jointly and severally liable for $2,500 plus interest from August 4, 1943, and costs.

Appellants are correct in their contention that the trial court erred in making only the general finding that the allegations of the complaint were true and those of the answers untrue, since such findings do not dispose of the issues litigated, they fail to disclose what issues were considered by the court, and do not conform to the general rules governing the clarity and preciseness of findings. (53 Am.Jur., §§ 1134, 1137-1144, pp. 788-790, 792-798.)

There is authority to support findings which state that all of the allegations of plaintiff's complaint are true, and that all of the allegations of defendants' answer are untrue. (*Alameda County* v. *Crocker*, 125 Cal. 101 [57 P. 766]; *Carey* v. *Brown*, 58 Cal. 180; *Carr* v. *International Indemnity Co.*, 58 Cal.App. 614 [209 P. 83]; *Kendrick* v. *Gould*, 51 Cal. App. 712 [197 P. 681]; 24 Cal.Jur. 986.) None of the cited cases involved a complaint based upon several inconsistent common counts. Respondent refers to cases in which common counts were involved, but those cases differ from the present in that specific findings were made. Reliance is placed by respondent on *Wood* v. *Mesmer*, 46 Cal.App. 257 [189 P. 134].

At page 259 the court there stated that "In an action of this kind a finding by the court that the defendant did become indebted to the plaintiff in a stated sum upon an open book account, or that the defendant became indebted to the plaintiff for work and labor performed, materials furnished, etc., at or within a stated period of time, is a finding of fact and not a mere conclusion of law." Reference is made to the Mesmer case in *Oceano Beach Resort Co.* v. *Clark,* 106 Cal.App. 582, 586 [289 P. 950]: ". . . we agree with the appellant that the words in the court's findings, as follows: 'But on the contrary plaintiff is indebted to the defendant in a large sum of money, towit, $5,462.28'—are only a conclusion of law, as shown by the following cases: *Adams-Campbell Co.* v. *Jones,* 71 Cal.App. 723 [236 P. 322], *Lynip* v. *Alturas School Dist.,* 24 Cal.App. 426 [141 P. 835], *Wood* v. *Mesmer,* 46 Cal. App. 257 [189 P. 134], and not a finding of fact at all. . . . We may state that if the conclusion of law had been preceded by a statement of facts, showing the indebtedness of $5,462.28, as set forth in the case of *Wood* v. *Mesmer, supra,* then it would have constituted a finding of fact."

In *Baird* v. *Ocequeda,* 8 Cal.2d 700 [67 P.2d 1055], as here, the plaintiff sought to recover on an express and implied contract. The trial court found all of the allegations of the complaint as amended to be true. On appeal it was urged that the effect of this was to permit the plaintiff to recover on inconsistent theories. The Supreme Court ruled (p. 703): "Even if this be conceded, it is not fatal to the judgment. Examination of the record discloses that there is evidence to support a recovery on either theory. This being so, the findings on the inconsistent theory may be disregarded as surplusage." The question for determination in the instant case is whether the record discloses that there is evidence to support a recovery under each of the four counts of respondent's complaint against Moore Company and also against Nicholson Corporation.

A preliminary matter concerns respondent's belief that as the $50,000 was procured for the joint venture, if he is entitled to recovery, both joint venturers may be held. The general rule as to the liabilities of joint adventurers to third persons is that, "As to third persons who deal with a joint adventurer *in good faith* and *without knowledge of any limitation upon his authority,* the law presumes him to have been given power to bind his associates by such contracts as are

reasonably necessary to carry on the business in which the joint adventurers are engaged. . . . One who is a member of a joint adventure but who is unknown to be such at the time by a third person who enters into a contract with another member individually is not rendered liable to such third person for services rendered under such contract, or for damages for the breach thereof, by the fact that the contract relates to the business of the joint venture if the contracting member in making such contract exceeded his authority and had no power to bind his associates thereby.'' (Italics added.) (33 C.J. 871-872; Civ. Code, § 2403; 14 Cal.Jur., § 3, p. 762.)

■■■ As to the first cause of action, there is no evidence that either Moore Company or Nicholson Corporation ''agreed to pay to plaintiff the reasonable value of his services rendered by him'' in procuring the investment of $50,000 by Sandeen. The original contract under which respondent was to procure a performance bond in exchange for getting the insurance of the joint venture was rescinded (6 Williston on Contracts, § 1826) and a new contract substituted therefor (20 Cal.Jur. 250; 6 Williston on Contracts, § 1865). Under the new contract Block was to obtain additional financing in exchange for getting a share of the insurance.

The second cause of action seeks restitution for appellants' breach of contract. (Rest. of the Law of Contracts, § 347.) There is evidence to support a recovery on this cause of action. Appellants concede that if they be deemed to have breached the agreement with respondent by causing him to share the insurance with other brokers, respondent might treat the contract as rescinded and sue for the reasonable value of his services provided he deducted from the reasonable value of such services the amounts received by him under the contract. (*Gray* v. *Bekins*, 186 Cal. 389 [199 P. 767] ; Rest. of the Law of Contracts, § 347.) Respondent received $1,405.81 as commissions from the insurance companies involved. It is immaterial that this amount was not paid by appellants since under the agreement the consideration for respondent's services in financing the joint venture was the opportunity to write the insurance so as to receive commissions from the companies with whom respondent placed the insurance. If $2,500 is the reasonable value of his services in securing the Sandeen investment, $1,405.81 must be deducted therefrom.

Respondent admits that he originally did not intend to make a direct monetary charge for procuring the additional financ-

ing—he expected to be reimbursed for his trouble by commis-- sions from insurance companies.

The third cause of action is on an account for services rendered—an open book account. The Supreme Court in *Wright* v. *Loaiza*, 177 Cal. 605, 606-607 [171 P. 311], discussed a book account as follows: "A book account is defined as 'a detailed statement, kept in a book, in the nature of debit and credit, arising out of contract or some fiduciary relation.' (1 C.J. 597.) A necessary element is that the book shall show against whom and in whose favor the charges are made. (1 C.J. 598.)" Respondent claims that testimony that whenever insurance was to be placed Reid would notify Block of the necessity and Block would procure it and then bill the joint venture, sending invoices addressed to Nicholson Corporation, et al., is evidence of an account. It is urged that the item of $2,500 is the final entry in Block's books covering the dealings between himself and the corporations. The language of *Lee* v. *De Forest*, 22 Cal.App.2d 351, 360-361 [71 P.2d 285] is in point: "It may be that there are circumstances under which an item not ordinarily included in an open account may be placed there in the ordinary course of business, but we think this case is not one of that nature."

An account stated was pleaded as the fourth cause of action. "An account stated requires that there be an acknowledgment of a previous indebtedness, since such indebtedness constitutes the consideration upon which the new contract is based. It is also required that there be an agreement that the balance is correct, and a promise for the payment of such balance. This promise may be either express or implied." (1 Cal.Jur. p. 190, § 47.) ■ Respondent claims that the previous relationship of debtor and creditor was a preexisting legal obligation on appellants' part either to continually place insurance through respondent or to pay respondent the reasonable value of his services in procuring the additional financing. The latter alternative would be afforded respondent as restitution were appellants to breach their contract. (Rest. of the Law of Contracts, § 347.) This is insufficient for an account stated, since the office of account stated is only to determine the amount of a debt where liability exists. (*Stimson Mill Co.* v. *Hughes Mfg. Co.*, 8 Cal.App. 559 [97 P. 322], citing *Chase* v. *Chase*, 191 Mass. 556 [78 N.E. 115].) As to the requirement of a promise, respondent urges that appellants' silence after receipt of the statement is sufficient acquiescence. Insofar as

Nicholson Corporation is concerned, there appears to have been no "silence." ▮ Furthermore, Moore Company claims that the statement was to be used as a basis for discussion as to whether respondent would be paid extra compensation, and hence it is inconsistent for respondent to now assert that the time during which the matter of extra compensation was discussed gave rise to an implied acquiescence on which an "account stated" could be based. (*Craig* v. *Lee,* 36 Cal.App. 335 [171 P. 1089].)

▮ Unlike the situation presented in *Baird* v. *Ocequeda, supra,* there is no evidence to support a recovery under every count. Only the second count is supported by the evidence. It is impossible to tell what the theory of the trial court may have been. The general finding that the allegations of the complaint "are true" and that the allegations of the answers except those admitting allegations of the complaint "are untrue" amounts to a finding on inconsistent theories, only one of which is supported. For this reason the judgment must be reversed.

The trial court is directed to make findings as to the following issues: Reid's authority to bind the joint venture and Block's knowledge thereof; the existence and terms of an express contract; whether the parties had performed in full or in part; whether the sum of $2,500 was the reasonable value of Block's services, and after determining such reasonable value, whether the amount received by respondent in commissions, namely $1,405.81, must be deducted therefrom; whether there was an open book account; whether there was any antecedent monetary indebtedness upon which an "account stated" could be predicated, and whether appellants' conduct amounted to an implied acquiescence in the correctness of the account. Such new findings may be based on the evidence already introduced or on additional evidence produced hereafter, in the discretion of the trial court. (*Panama Mail S.S. Co.* v. *Vargas,* 281 U.S. 670 [50 S.Ct. 448, 74 L.Ed. 1105]; *Lane* v. *Safeway Stores, Inc.,* 33 Cal.App.2d 169 [91 P.2d 160]; *People* v. *One 1940 Chrysler, ante* p. 306 [175 P.2d 585].) ▮ Section 4¾ of article VI of the state Constitution implemented by Code of Civil Procedure, section 956a, and Rules on Appeal, rule 23, ordinarily applies to a case where the judgment may be cleared by additional findings. In the present case the findings and the evidence are so inconsistent that a miscarriage of justice may have resulted.

The appeal from the order denying appellants' motion for a new trial, being a non-appealable order (*Roberts* v. *Brae*, 5 Cal.2d 356 [54 P.2d 698], is dismissed. The judgment is reversed with directions to proceed to make findings on the specific issues involved.

Peters, P. J., and Schottky, pro tem. concurred.

A petition for a rehearing was denied February 21, 1947.