[Civ. No. 20530.   Second Dist., Div. Two.   Apr. 15, 1955.]

BLANCHE E. ROBIN et al., Respondents, v. FORREST SMITH, Appellant.

Pines & Walsh, Adele Walsh and Harry A. Pines for Appellant.

Gilbert Klein for Respondents.

FOX, J.—Plaintiffs, as coexecutrices of the Estate of Louis Minick, sued defendant on a book account.* Defendant appeals from an adverse judgment. The sole question is whether the evidence established the existence of a book account.

Decedent was engaged in the dairy and ice cream business. He was the sole proprietor of Minick's Dairy Farm. It is the books of this enterprise that are here involved.

Plaintiffs' amended complaint alleges that within four years defendant became indebted to the deceased Louis Minick in the sum of $5,766.78 upon a book account, reflecting such balance as owing to decedent by reason of money loaned to defendant.

Plaintiffs introduced four exhibits which purportedly comprise the asserted book account. Exhibit 1 consists of pages 14 through 16 inclusive taken from the books of decedent's company. They are collectively captioned "Record of Disbursements for August 1949" and contain over sixty entries relating to sums given by check to various individuals and corporations. Among these items is a check drawn to defendant's order on August 23, 1949, for $1,660.81. No other data with reference to this disbursement appears except that it was chargeable to decedent's personal account. Several other items also are thus charged, including a check made out to the Collector of Internal Revenue. Other disbursements recorded include checks to the Southern California Edison Company, Linen Service Company, H. L. Byram, Tax Collector of Los Angeles County, etc. Plaintiffs' Exhibit 2 is a sheet from the company books, one side of which is entitled "Record of Checks Drawn On —— month of January, 1950 No. 1." This discloses a check drawn to defendant's order, in the amount of $5,000, chargeable also to decedent's

---

*The original complaint, filed March 4, 1953, also included a count for money loaned, and an account stated. These counts were omitted in the amended complaint.

personal account. The rest of the sheet lists about 30 other checks drawn in favor of miscellaneous payees from January through March of 1950, including one to the Collector of Internal Revenue.

Exhibits 3 and 4 are general ledger sheets entitled "Louis Minick—Investment." Exhibit 3 contains 24 entries covering the year 1949. The entry for August 31st shows a total of $9,621.42 listed under the "charges" column. This total includes the check of August 23, 1949, for $1,660.81 in favor of defendant, and among other items, the check issued on August 11, 1949, to the Collector of Internal Revenue to apply on Minick's personal income taxes. Exhibit 4 simply records a charge of $5,000 against Minick's investment account for January, 1950, and apparently represents the $5,000 check issued to defendant although his name does not appear thereon. This item is but one notation in a column of figures representing various transactions of an undisclosed nature with other parties.

On Exhibits 1 and 2, defendant's name appears only as the person in whose favor the respective checks mentioned above were drawn. There is no specific account between decedent or his company and defendant. There is nothing in the exhibits which identifies the nature of the transaction beyond that of a disbursement by check. There is no figure on the sheets in evidence which corresponds to the amount of the judgment. Likewise, there are no figures from which a balance may be struck and the amount of the judgment derived. In fact, the books do not reveal any credits to defendant and are utterly silent as to what the disbursements represent. So far as appears from the books, no charges are shown against defendant—the only charges posted being against decedent's investment account for certain checks drawn against his business. In this connection, the books place upon an equal footing—as mere disbursements—the checks drawn in favor of defendant and the Collector of Internal Revenue, the Southern California Edison Company, and the tax collector of Los Angeles County.

It is at once manifest that while defendant's name appears as the payee of two checks among a miscellaneous agglomeration of names set down in a business record, there is absolutely no showing of any book account between the parties as that term is understood in legal parlance. At the outset we may state certain truisms. "The law does not prescribe any standard of bookkeeping practice which all must follow, regardless

of the nature of the business of which the record is kept. We think it makes no difference whether the account is kept in one book or several so long as they are permanent records, and constitute a system of bookkeeping as distinguished from mere private memoranda." (*Egan* v. *Bishop,* 8 Cal.App.2d 119, 122 [47 P.2d 500].) ▇ With the addition of section 1953f of the Code of Civil Procedure in 1941 as part of the Uniform Business Records Act, many of the strict foundational requirements of the common law were relaxed to facilitate the admission into evidence of certain records kept in the regular course of business. (*Loper* v. *Morrison,* 23 Cal. 2d 600 [145 P.2d 1]; *Thompson* v. *Machado,* 78 Cal.App.2d 870, 873 [178 P.2d 838].) But this liberalized rule of evidence relating to the admissibility of business records did not, of course, modify the substantive law as to the elements of a book account. (*Tabata* v. *Murane,* 76 Cal.App.2d 887, 891 [174 P.2d 684].) ▇ The nature of a book account is well defined in *Tillson* v. *Peters,* 41 Cal.App.2d 671, 678 [107 P.2d 434], as follows: "A book account may be deemed to furnish the foundation for a suit in assumpsit, within the limitation of time prescribed by section 337 of the Code of Civil Procedure, only when it contains a statement of the debits and credits of the transactions involved completely enough to supply evidence from which it can be reasonable determined what amount is due to the claimant." ▇ The court further points out that "The term 'account,' as it is used in the statute, clearly requires the recording of sufficient information regarding the transaction involved in the suit, from which the debits and credits of the respective parties may be determined, so as to permit the striking of a balance to ascertain what sum, if any, is due to the claimant." ▇ A book account may, of course, consist of a single entry reflecting the establishment of an account between the parties. (*Bailey* v. *Hoffman,* 99 Cal.App. 347 [278 P. 498].)

Tested by these principles, it is plain that the entries in decedent's books do not constitute a book account as contemplated by the law. On this point decedent's bookkeeper testified that "In my books of account I have no account with Forrest Smith." He further stated that while in certain cases accounts were set up on separate sheets to show money due decedent's dairy business, there was no such sheet in the general ledger for defendant. Plaintiffs concede that under the system of bookkeeping used by decedent no accounts receivable were set up in his books. They assert, however, that

the entries referred to were classified as accounts receivable in the auditor's working papers which were prepared semi-annually. ▉ But the existence of a book account is not established by extrinsic reference to "working papers" of an auditor prepared semiannually which are neither introduced in evidence nor form a part of the creditor's bookkeeping system as such. The record of the transaction creating the account between the parties must appear from the account books of the owner of the demand in such form as will show an account was actually being kept. Such was not the case here. The entries appearing on plaintiffs' exhibits consist only of disbursements—two—neither of which is charged to defendant, nor is there any entry suggesting an indebtedness was thereby created. There is, in fact, no specific account in these books between decedent and defendant. No credits are disclosed yet the judgment is substantially less than the total of the two disbursements. No figures are recorded which "supply evidence from which it can be reasonably determined what amount," if any, is due decedent's estate. In truth, there are no figures in the books from which the amount of the judgment can be derived.

*Boehmke* v. *Westfall,* 106 Cal.App. 754 [289 P. 920], is of no comfort to plaintiffs. In that case all the elements here lacking appear plainly in the book account between the plaintiff daughter and defendant mother, which clearly reflect the maintenance of an account between the parties in which the amount owing is readily ascertainable.

In an attempt to fortify their position, plaintiffs point out that defendant testified on cross-examination that he borrowed $5,000 from Minick in January, 1950, and had not repaid it. This admission cannot be used to supply, or as a substitute for, an alleged book account between the parties that never existed. Defendant was called upon to meet the charge that he was indebted to Minick on a book account, and not upon any other cause of action. (*Tabata* v. *Murane,* 76 Cal.App.2d 887, 892 [174 P.2d 684].) ▉ Such an admission would have been relevant and material in an action for money loaned, but, as pointed out in the footnote, the count for money loaned which was in the original complaint was omitted from the amended complaint. The undoubted reason for eliminating that count was the obvious fact that it was vulnerable to the two-year statute of limitation. By proceeding on a book account plaintiffs had the benefit of a four-year statute of limitation. But in order to avail themselves of this extended

period of limitation, they must prove the cause of action to which it relates, viz., a book account. This they have failed to do, and they cannot bring themselves within the extended period by proving an indebtedness which would have been barred under the count they had abandoned. (*Cleaveland* v. *Inter-City Parcel Serv.,* 22 Cal.App.2d 574, 579-581 [72 P.2d 179].) The comment of the court in the Tabata case, *supra,* is here apposite. It was there pointed out that "Plaintiff's cause of action was not for money loaned. If he failed to prove a book account he could not recover upon some other cause of action [p. 892]."

Plaintiffs rely upon the established rule that a reviewing court will not reverse a judgment where crucial findings are based on conflicting evidence. That rule, however, is not applicable here for there is an entire absence of any account between decedent and defendant.

The judgment is reversed.

Moore, P. J., and McComb, J., concurred.