[Civ. No. 22328. Second Dist., Div. Two. Nov. 8, 1957.]

ELLA MARY JOSLIN, Respondent, v. RAY O. GERTZ, as Executor, etc., Appellant.

Alfred E. Frazier for Appellant.

Charles E. Ogle for Respondent.

FOX, J.—Plaintiff provided her sister (Jo Guynn), the deceased herein, funds for the purchase of a home. Reimbursement not having been made prior to the sister's death on May 15, 1955, plaintiff filed a claim with the executor, who disallowed it. Plaintiff brought this action in two counts: (1) an open book account, and (2) an account stated. From a judgment in plaintiff's favor, the executor has appealed.

In 1949 plaintiff and her husband loaned plaintiff's sister Jo $5,000. This loan was evidenced by a promissory note secured by a trust deed on property that Jo owned in Santa Cruz. An account of the periodic payments by Jo on the loan was kept by plaintiff on page 147 of the account book here in question. This loan was paid off in 1953 when Jo sold the Santa Cruz property.

In March, 1952, Jo entered into an escrow for the purchase of a home in Morro Bay. On the 28th of the month, plaintiff withdrew $3,000 from her savings account which, on the 31st, she paid into the escrow to enable it to be closed.[1] On April 16, 1952, plaintiff withdrew $4,000 from her funds. A little more than $3,500 of this money was used to pay off the bank's first lien on the property Jo Guynn had purchased and the balance was applied on the second lien of the sellers.

On page 148 of the account book plaintiff entered these transactions. The heading reads:

"Loaned Jo Guynn on her Morro Bay house
at 1170 Bonita St."

Then there are these entries:

"March 31, 1952 at 3% interest $3,000.00
April   16, 1952 " 3%      "      $4,000.00"

---

[1] $2,809.38 was used to meet escrow requirements. A bank money order in favor of Jo Guynn for $190.62 represented the balance of the $3,000.

The book was kept in plaintiff's possession and the entries were in her handwriting. The funds were her separate property.

Approximately a month after the second transaction, plaintiff's husband was present in their home when plaintiff exhibited the above entries in the book to her sister Jo. He testified: "She [Jo] said it was the correct amount she had borrowed, after she showed her the ledger." A little later he phrased the matter in this fashion: "She [Jo] said the amount my wife had entered in the book was correct."

The court found that initially "Jo Guynn was indebted to plaintiff on an open book account in the principal sum of $7,000 plus interest as alleged in paragraph I of plaintiff's first cause of action," but that approximately one month after the second advance (that is the $4,000 transaction on April 16, 1952) "an account was stated by and between plaintiff and decedent Jo Guynn, as alleged in paragraph I of plaintiff's second cause of action, and that said account stated constituted a new contract between plaintiff and decedent Jo Guynn whereby decedent Jo Guynn became indebted to plaintiff in the principal sum of $7,000.00 together with interest thereon, as alleged in paragraph I of plaintiff's second cause of action."

In seeking a reversal, the executor contends that (1) there is no evidence of either a book account or an account stated; (2) the court erroneously and prejudicially admitted testimony of plaintiff in contravention of the "dead man's statute" (Code Civ. Proc., § 1880 subd. 3)[2]; (3) the findings are uncertain and on inconsistent theories; and (4) the judgment has resulted in a miscarriage of justice.

A book account is defined in *Wright* v. *Loaiza,* 177 Cal. 605, 606-607 [171 P. 311], as "a detailed statement, kept in a book, in the nature of debit and credit, arising out of contract or some fiduciary relation." It is, of course, necessary for the book to show against whom the charges are made. (*Block* v. *D. W. Nicholson Corp.,* 77 Cal.App.2d 739, 746 [176 P.2d 739].) It must also be made to appear in whose favor the charges run. This may be shown by the production of the book from the possession of the plaintiff and his

---

[2]The pertinent portion of the statute reads as follows:

"The following persons cannot be witnesses: . . . Parties . . . to an action . . . against an executor . . . upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person."

identification of it as the book in which he kept the account between him and the debtor. (*Bailey* v. *Hoffman,* 99 Cal. App. 347, 349 [278 P. 498] ; *Boehmke* v. *Westfall,* 106 Cal. App. 754, 758 [289 P. 920].) ▮ An open book account may consist of a single entry reflecting the establishment of an account between the parties. (*Robin* v. *Smith,* 132 Cal. App.2d 288, 291 [282 P.2d 135]) and may contain charges alone if there are no credits to enter. (*Tabata* v. *Murane,* 76 Cal.App.2d 887, 890 [174 P.2d 684].) ▮ Money loaned is the proper subject of an open book account. (*George Rice & Sons* v. *Cowan,* 46 Cal.App. 225 [189 P. 132].) ▮ Of course a mere private memorandum does not constitute a book account. (*Robin* v. *Smith, supra.*)

▮ Applying these principles to our factual situation, it is clear there is ample evidence to support the trial court's finding that initially the decedent "was indebted to plaintiff on an open book account in the principal sum of $7,000 plus interest." Plaintiff had possession of the account book and produced it at the trial. She identified the account and testified she made the entries on the dates therein stated. Plaintiff's husband testified the money involved was the plaintiff's separate fund and that the entries were in her handwriting. This clearly established plaintiff as the person in whose favor the charges were made. (*Bailey* v. *Hoffman, supra.*) The account heading definitely identifies Jo Guynn as the party against whom the charges were entered. In *Boehmke* v. *Westfall, supra,* the account kept by the daughter was simply headed "Mother owes." This was held to be sufficient to identify the account as being against plaintiff's mother. The testimony of plaintiff's husband reveals that decedent knew of the account and the charges therein and admitted the correctness thereof.

Defendant relies upon *Lee* v. *DeForest,* 22 Cal.App.2d 351 [71 P.2d 285], and *Tillson* v. *Peters,* 41 Cal.App.2d 671 [107 P.2d 434], in support of his proposition that the entries in plaintiff's account book cannot constitute an open book account. These cases are not here applicable. They involved periodic payments under lease agreements which fixed the time for payment of the several obligations. To permit such obligations to be transformed into an open book account would be to make for the parties a contract different from that upon which they had agreed. Moreover, in the Tillson case, which involved an oral lease, the court pointed out (p. 674) that the complaint did "not pretend to state a cause of action

based on a book account'' and that in any event the memorandum was insufficient to create an open book account (pp. 677-678). In the case at bar an open book account was entirely consistent with the transactions involved and reasonably within the contemplation of the parties, and the first cause of action clearly alleged an open book account.

There is no merit in defendant's contention that this was merely a private memorandum. The account was kept in a bound volume in which other business transactions were recorded, viz., the payments made by Jo on the previous loan on the Santa Cruz property.

■ To constitute an account stated there must be an acknowledgment of a previous indebtedness, since such indebtedness constitutes the consideration upon which the new contract is based. Also, there must be an agreement that the balance is correct, and a promise, either express or implied, to pay such balance. (*Block* v. *D. W. Nicholson Corp.*, 77 Cal.App.2d 739, 746 [176 P.2d 739]; *Bennett* v. *Potter*, 180 Cal. 736, 745 [183 P. 156].) The amount of the balance agreed to be owing must appear or be readily ascertainable from the total of figures then in existence and agreed to. (*Metropolitan Water Dist.* v. *Adams*, 57 Cal.App.2d 574, 577 [134 P.2d 882]; *Kimball Motor Truck Corp.* v. *Fickett*, 114 Cal.App. 65, 69-70 [299 P. 566].)

■ Measured by these principles, it is apparent there is ample evidence to support the finding that ''approximately one month after April 16, 1952 [which was the date of the second transaction] an account was stated by and between plaintiff and decedent Jo Guynn. . . .'' This finding is obviously based on the testimony of plaintiff's husband. It disclosed that when plaintiff showed Jo her book account of their financial transactions Jo acknowledged such previous indebtedness created by the advance of funds for her by plaintiff on March 31 and April 16, 1952, and that she recognized such items as correct. The total was readily ascertainable by the simple addition of the two amounts. And it was entirely reasonable for the trial court to draw the inference that under the circumstances Jo impliedly promised to pay the account thus agreed upon.

■ In arguing that plaintiff's testimony was inadmissible under the dead man's statute defendant overlooks the fact that ''it is the established law of California that section 1880, subdivision 3, of the Code of Civil Procedure does not prevent a party from giving testimony relative to (1) the identity of

the books produced, and (2) the fact that he kept books of original entries, which were made at the time of the transactions." (*Kains* v. *First Nat. Bank*, 30 Cal.App.2d 447, 450 [86 P.2d 935].) Under this rule plaintiff was entitled to identify the account in question and testify that she made the entries at the times therein stated. As previously pointed out, this testimony, together with that of plaintiff's husband[3] is sufficient to sustain the findings of the trial court and the judgment based thereon.

It is true that plaintiff was permitted to give testimony beyond that above noted and that such testimony contravened the dead man's statute. The admission of this testimony, however, was harmless since there was ample other competent evidence to support the findings and judgment. (*Alvarez* v. *Ritter*, 67 Cal.App.2d 574, 579 [155 P.2d 83].)

There is no merit in defendant's contention that the findings are either uncertain or on inconsistent theories. They are crystal clear that at the outset the advances by plaintiff for her sister Jo were on the basis of an open book account, and that approximately a month after the second transaction "an account was stated by and between plaintiff and decedent . . ."

There is likewise no merit in defendant's contention that "the judgment has resulted in a miscarriage of justice." It is not disputed that plaintiff provided the funds for the purchase of her sister's home and that an appropriate record was made thereof. The inference is clear that these advances were loans, and the testimony establishes that the loans were the foundation of an account stated. Defendant did not produce any contrary evidence on these issues.

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied November 25, 1957, and appellant's petition for a hearing by the Supreme Court was denied December 30, 1957.

---

[3]The testimony of plaintiff's husband was not barred by the dead man's statute since he was not a party to the action and since the loaned money was plaintiff's separate property. (*Cullen* v. *Bisbee*, 168 Cal. 695, 698-699 [144 P. 968]; *Manford* v. *Coats*, 6 Cal.App.2d 743, 745 [45 P.2d 395]; *Alvarez* v. *Ritter*, 67 Cal.App.2d 574, 579 [155 P.2d 83].)