[No. A010544. First Dist., Div. Two. Nov. 21, 1985.]

INTERSTATE GROUP ADMINISTRATORS, INC.,
Plaintiff and Appellant, v.
CRAVENS, DARGAN & CO., Defendant and Respondent.

COUNSEL

Hovanesian & Hovanesian and Ara Hovanesian for Plaintiff and Appellant.

David W. Gordon and Bronson, Bronson & McKinnon for Defendant and Respondent.

OPINION

**KLINE, P. J.**—Plaintiff and cross-defendant Interstate Group Administrators, Inc. (hereinafter Interstate or appellant) appeals from a judgment of the superior court awarding respondent Cravens, Dargan & Co. (hereinafter Cravens or respondent) $64,706.31 on its cross-complaint which alleged a common count to recover a sum due on an open book account. We find that the trial court improperly prevented Interstate from presenting evidence of a setoff to Cravens' claim. Accordingly, we reverse the judgment and re-

mand for retrial for the limited purpose of allowing Interstate to present such evidence.

### Procedural Summary

The proceedings below were initiated by Interstate to recover commissions on insurance policies which it had sold on behalf of Cravens as Cravens' agent. Cravens cross-complained against Interstate to recover premiums due Cravens which Interstate had collected and allegedly withheld. The cause was tried before the court sitting without a jury; the court found that Cravens was entitled to $82,652.52 on its cross-complaint and that Interstate was entitled to $17,946.21 on its complaint. Thus, judgment for the net amount of $64,706.31 was entered in favor of Cravens and against Interstate.

On appeal, Interstate has not attacked these findings as such but complains that the trial court erred in refusing to admit evidence of an additional $56,942 setoff arising out of the open book account between the parties.

### Statement of Facts

The source of the present litigation between Interstate and Cravens can be traced back to an earlier insurance agency agreement between Cravens and another agent, Tablak, Abbott and Keene (hereinafter Tablak). Pursuant to that agreement, Tablak sold insurance policies on behalf of Cravens to members of the California Dry Cleaners Association. Tablak was required to collect the premiums paid on the policies and to remit them to Cravens; in turn, Cravens was obligated to pay a share of the premiums to Tablak as a commission.

Shortly before July of 1970, Tablak encountered financial difficulties which made it impossible for it to continue to do business with Cravens. During February or March of 1970, Interstate's president, Thomas Blake, met with representatives of Tablak to discuss the possibility of a merger between the two companies. The merger was not consummated, however, because Tablak's records were in such disarray that the financial status of the business could not be determined.

Subsequently, Mr. Blake met with Cravens' representatives to discuss the possibility of Interstate taking over the Tablak accounts. After a series of meetings, Interstate agreed with Cravens and Tablak to take over the administration of the policies previously produced by Tablak. Interstate agreed to collect the premiums on these policies and to remit them to Cravens; in

exchange, Cravens agreed to pay Interstate a commission on the premiums collected.

As part of the aforementioned agreement, Interstate agreed to pay $25,000 to Cravens to settle *all* prior debts owing from Tablak to Cravens.[1] After payment of this sum, Interstate was not to be held responsible for any debt or obligation owed by Tablak to Cravens.

Commencing in June 1970, Interstate assumed responsibility for the Tablak accounts, and was therefore obliged to collect premiums and remit them to Cravens. Cravens was in turn required to pay Interstate a portion of the policy premium as a commission. Interstate continued to administer the accounts through November of 1971, when its relationship with Cravens was apparently terminated.

At trial, Mr. Blake testified that Cravens had withheld commissions which were owed to Interstate. On Interstate's complaint, the trial court determined that Interstate was entitled to $17,946.21, which sum represented commissions earned by Interstate but paid by Cravens to a bank to satisfy a preexisting obligation of Tablak. The trial court determined that this obligation had previously been satisfied by the $25,000 payment to Cravens in satisfaction of Tablak's past debts.

With respect to Cravens' cross-complaint, the trial court found that Interstate owed Cravens $90,801.20 in withheld premiums, less $8,148.68 in offsets, for a total amount due of $82,652.52. The trial court thus found that Interstate owed Cravens the net amount of $64,706.31.

As indicated, Interstate does not contest these determinations as such. Instead, it complains that the trial court improperly excluded evidence of an *additional* $56,942 setoff against the sums sought in Cravens' cross-complaint. Apparently, this alleged $56,942 setoff was composed of monies advanced by Interstate to Cravens to cover premiums which Tablak had collected from its insureds but had failed to remit to Cravens. Interstate claimed that these premiums, which were collected by Tablak but were not forwarded to Cravens, were a preexisting debt of Tablak which had been extinguished, at least with respect to Interstate, by Interstate's $25,000 payment to Cravens. Nevertheless, because Cravens' books regarding the for-

---

[1] These debts were apparently composed primarily of premiums collected by Tablak which it had failed to remit to Cravens. The $25,000 figure was an approximation of the debt, since it was impossible to obtain a completely reliable figure from Tablak's books. In effect, Interstate and Cravens reached an accord and satisfaction on the issue of Tablak's prior debt to Cravens.

mer Tablak accounts were in disarray, Cravens made demand on Interstate to pay premiums which had already been paid by the insured to Tablak. Although Interstate did not consider itself bound to pay these premiums, it did so in order to protect the insureds and to keep the policies in force. However, according to Interstate, these payments were made with the understanding that the parties would clean up the accounts later, and, presumably, that Cravens would reimburse Interstate for any payment it was not obligated to make.

After spending a considerable amount of time attempting to determine the nature of Interstate's setoff, the trial court finally determined that the setoff could not be set up as a defense to Cravens' claim in any event, because it had not been specifically pled as an affirmative defense in Interstate's answer to Cravens' cross-complaint. Subsequently, Interstate made a motion to amend its answer so as to allege the setoff but the motion was denied.

On appeal, Interstate claims the court erred in refusing to admit evidence relating to the setoff and committed an abuse of discretion when it denied Interstate's motion to amend the answer.

### Discussion

As discussed above, appellant initiated this action by filing its complaint to recover commissions withheld by respondent. Respondent cross-complained seeking to recover premiums withheld by appellant. Appellant's answer to the cross-complaint generally denied respondent's right to recover the commissions, but did not specifically allege the $56,942 setoff as an affirmative defense.

Respondent's cross-complaint initially alleged seven causes of action. However, six were dismissed, since the court found, and the parties agreed, that respondent's action essentially alleged a common count to recover monies owed on an open book account.

Accordingly, respondents recovered the wrongfully withheld premiums on the basis of the common count only. This fact is crucial to the resolution of this case, since it directly relates to the scope of the defenses raised by the general denial in appellant's answer to respondent's cross-complaint.

Respondent contends the trial court correctly concluded that appellant could not introduce evidence to prove the alleged $56,942 setoff because the issue had not been framed by the pleadings. Respondent argues that the

alleged setoff was "new matter constituting a defense" (i.e., an affirmative defense) which must have been specifically pleaded in the answer to the cross-complaint. (Code Civ. Proc., § 431.30, subd. (b)(2); *Space Properties, Inc.* v. *Tool Research Co.* (1962) 203 Cal.App.2d 819, 827 [22 Cal.Rptr. 816]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 1004-1005, pp. 425-426.) Although we agree with respondent that set-offs must generally be affirmatively pleaded, we do not find this general rule controlling under the circumstances of the present case.

■ "The common count is a general pleading which seeks recovery of money without specifying the nature of the claim[2] . . . . Because of the uninformative character of the complaint, it has been held that the typical answer, a *general denial,* is sufficient to raise almost any kind of defense, including some which ordinarily require special pleading. [Citations.]" (5 Witkin, Cal. Procedure, *supra,* § 998, p. 422, italics in original; see also, *Heaton-Hobson, etc. Offices* v. *Arper* (1904) 145 Cal. 282, 284 [78 P. 721]; *Bridges* v. *Paige* (1859) 13 Cal. 640, 641; *Carranza* v. *Noroian* (1966) 240 Cal.App.2d 481, 485-486 [49 Cal.Rptr. 629]; *Marshall* v. *Von Zumwalt* (1953) 120 Cal.App.2d 807, 810 [262 P.2d 363]; *Aetna Carpet Co.* v. *Penzner* (1951) 102 Cal.App.2d 859, 860 [228 P.2d 347]; *Evans* v. *Zeigler* (1949) 91 Cal.App.2d 226, 230-231 [204 P.2d 902]; *DeSantis* v. *Miller Petroleum Co.* (1938) 29 Cal.App.2d 679, 683 [85 P.2d 489]; *Wallace* v. *Crawford* (1937) 21 Cal.App.2d 394, 403 [69 P.2d 455].) As the Supreme Court stated long ago, "[a]nything which shows that the plaintiff has not the right of recovery at all [on a common count], or to the extent he claims, on the case as he makes it, may be given in evidence upon an issue joined by an allegation in the complaint, and its denial in the answer. Where, however, something is relied on by the defendant which is not put in issue by the plaintiff, then the defendant must set it up. That is new matter—that is, the defendant seeks to introduce into the case a defense which is not

---

[2]Common counts are more fully explained by Mr. Witkin as follows: "In the common law action of *general assumpsit,* it was customary to plead an indebtedness by using the 'common counts.' These were statements to the effect that the defendant was indebted to the plaintiff in a particular sum, for some such generalized, formal reason as 'money had and received,' 'goods sold and delivered,' 'work and labor done,' 'materials furnished,' etc. The nature of this action, and the number and variety of the counts which developed at common law, are part of the subject of common law pleading. . . . . [¶] The averment of an indebtedness not by stating the actual ultimate facts in each particular case, but by using one of a series of generalized forms consisting in part of legal conclusions, is directly opposed to a basic principle of code pleading. Nevertheless, when the codes were adopted the familiarity of lawyers with the form, and its simplicity and convenience, were sufficient to overcome this objection. And today in nearly all code states and in the federal practice the common counts are permissible and widely used. In California, it is settled that they are good against special as well as general demurrers." (4 Witkin, Cal. Procedure (3d ed. 1985) § 504, pp. 538-539; see also, 1 Corbin on Contracts (1963) § 20, pp. 50-52.)

disclosed by the pleadings." (*Bridges* v. *Paige, supra,* 13 Cal. at p. 641; see also, *Carranza* v. *Noroian, supra,* 240 Cal.App.2d at pp. 485-486.)

Thus, in *Bridges* v. *Paige, supra,* the complaint alleged a common count which sought to recover for the reasonable value of legal services. Under a general denial, the defendant was permitted to contest the value of the services by showing that they had been negligently performed. (13 Cal. at pp. 641-642.) The court stated: "[T]he plaintiffs aver that the defendant is indebted to them in the sum of, say fifteen hundred dollars, for services rendered; that he is indebted to this amount because this was the value of these services. The defendant denies that he is indebted at all, and denies, further, that the services were of the value charged. He proposes to show that they were not of this value. He can do this by any legal proof, and he is not bound to set out his proofs in his pleading." (*Ibid.*)

By way of dicta in *Wallace* v. *Crawford, supra,* 21 Cal.App.2d 394, the court noted that the defendant would be allowed to set up a defense of accord and satisfaction to a common count even though that defense had not been affirmatively pled in the answer. As the court stated, "[i]t is the general rule that the defense of accord and satisfaction must be pleaded. But where the complaint is based on a common count, as it was in this case, the defendant may urge any defense which tends to show that the plaintiff has not a subsisting cause of action. [Citations.]" (*Id.,* at p. 403.)

Finally, in *Aetna Carpet Co.* v. *Penzner, supra,* 102 Cal.App.2d 859, the plaintiff sued on a common count for goods sold and delivered (specifically, a white carpet). At trial, the defendant attempted to show that the carpet delivered was not the carpet he had ordered. The trial court prevented the defendant from establishing this defense because it had not been pled in the answer. The Court of Appeal reversed, stating: "In an action upon a common count under a general denial the defendants may urge any defense tending to show that the plaintiff has no right to recover or to recover to the extent that he claims. [Citations.]" (*Id.,* at p. 860.)[3]

Respondent contends that the pleading rules applicable to common counts would only allow appellant to raise defenses to the direct obligation to pay on the matters raised by the common count. In other words, respondent contends that appellant may prove offsets only with respect to those policies on which respondent claims premiums have been withheld. We disagree.

---

[3]For a summary of additional cases addressing this issue, see *Carranza* v. *Noroian, supra,* 240 Cal.App.2d at pp. 486-488.

In recovering under its common count, respondent specifically established that appellant was indebted to it on "an open book account." ■ A "book account" is defined as a " 'detailed statement, kept in a book,[4] in the nature of debit and credit, arising out of contract or some fiduciary relation.' It is, of course, necessary for the book to show against whom the charges are made. . . . . It must also be made to appear in whose favor the charges run." (*Joslin* v. *Gertz* (1957) 155 Cal.App.2d 62, 65 [317 P.2d 155], quoting *Wright* v. *Loaiza* (1918) 177 Cal. 605, 606-607 [171 P. 311].) ■ A book account may furnish the basis for an action on a common count " '. . . when it contains a statement of the debits and credits of the transactions involved completely enough to supply evidence from which it can be reasonably determined what amount is due to the claimant.' " (*Tillson* v. *Peters* (1940) 41 Cal.App.2d 671, 678 [107 P.2d 434], quoted in *Robin* v. *Smith* (1955) 132 Cal.App.2d 288, 291 [282 P.2d 135].) ■ A book account is described as "open" when the debtor has made some payment on the account, leaving a balance due. (For more on book accounts see generally, 1 Cal.Jur.3d, Accounts and Accounting, § 3, pp. 214-217.)

■ For present purposes, the most important characteristic of a suit brought to recover a sum owing on a book account is that the amount owed is determined by computing *all* of the credits and debits entered in the book account. Accordingly, when a complaint alleges a common count to recover for a sum due on a book account, and, as occurred here, the complaint is answered by a general denial, this places in issue every entry in the book account. The defendant is therefore entitled to attack each of the entries "to show that the plaintiff has no right to recover or to recover to the extent that he claims." (*Aetna Carpet Co.* v. *Penzner, supra,* 102 Cal.App.2d at p. 860; see also, *Bridges* v. *Paige, supra,* 13 Cal. at p. 641.)

■ Appellant's alleged "set-off" relates to payments made on its book account with respondent.[5] Appellant claims that those payments were made in error, or, at least, that they were made with an understanding that the accounting problems would be cleared up later. Considering the authorities previously cited, we believe appellant was entitled to raise this issue even

---

[4]In this age of computer accounting, it is unlikely that a court would require that a book account actually be kept in a book; certainly computer memory is a reasonable substitute for the pages of a book, given that the data stored therein can always be reduced (or, more precisely, enlarged) to writing.

[5]This is not a case, as respondent would have us believe, where the setoff concerns a contract or relationship completely unrelated to the credits and debits recorded in the book account. The record indicates that the $56,942 setoff relates only to payments made on the very same book account upon which respondent is seeking to recover wrongfully withheld premiums.

though it had not been specifically pled. Appellant was attempting to show that it had made payments on the open book account which it was not contractually or otherwise bound to make. If this is true, the book account sued on was in error and should be adjusted to give appellant additional credit for the sums erroneously paid.

Respondent also contends that appellant should not be allowed to take advantage of the liberal construction given general denials to common counts because to do so would do violence to the rationale underlying the rule: that is, the prevention of surprise. Respondent notes that common counts are usually pleaded in general terms which do not give specifics or details to the defending party. Thus, respondent argues, a general denial to a common count is deemed to raise certain affirmative defenses because those defenses might otherwise have been suggested by the wording of a more detailed complaint.

It is claimed that it would be unfair to allow appellant to surprise respondent with the alleged setoff because appellant failed to disclose this claim in its bill of particulars filed in support of its complaint. However, appellant asserted the setoff not as part of its affirmative claim, but as a partial defense to appellant's counter claim. The issues raised by appellant's complaint and bill of particulars to recover commissions is thus of little relevance to the issues it might raise to defend against respondent's claim for premiums. We do not believe respondent should be precluded from raising the set-off as a defense merely because, in its complaint, it failed to affirmatively seek refund of the wrongfully paid premiums.[6]

Since we have concluded that the trial court erred when it ruled that evidence of the $56,942 setoff was not admissible under the pleadings, we do not address appellant's alternative contention that the trial court also erred when it denied appellant's motion to amend its answer.

### Disposition

Although we find that the trial court committed prejudicial error when it refused to admit evidence of the alleged set-off, we do not find that this

---

[6]Respondent also contends that the trial court gave appellant the opportunity to make use of the overpayment evidence to the extent that it was "relevant"; that is, to show that monies (premiums) had been paid on policies *on which respondent claimed monies were owing.* We are less certain, given contradictory statements in the record, that the trial court afforded appellant the opportunity to present the evidence regarding erroneous payments even with respect to this limited class of policies. However, even if the court did grant such a limited opportunity, it nevertheless erred, since, as indicated previously, appellant was entitled to contest *any* debit or credit stated in the open book account sued upon.

error requires unqualified reversal of the judgment. The action tried below was complicated and resolved a large number of issues which appellant has not contested on appeal. Appellant's *only* complaint on appeal is that the trial court failed to admit evidence of the set-off. We therefore believe this is an appropriate case in which to exercise our power to order retrial on a limited issue only. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal § 559, pp. 4498-4499.)

The judgment is reversed and the cause is remanded to the trial court for the limited purpose of taking evidence and making findings of fact regarding appellant's alleged $56,942 set-off.

Rouse, J., and Smith, J., concurred.

A petition for a rehearing was denied December 20, 1985.