Filed 6/22/15  Robinson & Wisbaum v. Smith CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBINSON & WISBAUM, INC., | |
| Plaintiff and Respondent, | G049562 |
| v. | (Super. Ct. No. 30-2010-00430534) |
| KIMBERLY S. SMITH, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment and order of the Superior Court of Orange County, Kirk H. Nakamura, Judge.  Affirmed.

David M. Leeper for Defendant and Appellant.

Aires Law Firm, Timothy Carl Aires and Justin G. Morong Plaintiff and Respondent.

## INTRODUCTION

Kimberly Smith appeals from a judgment in favor of the respondent law firm of Robinson & Wisbaum after a default judgment was entered against her on the law firm's complaint for unpaid attorney fees. Although there were some procedural irregularities along the way, which might have persuaded a judge to set aside the default or the judgment, Smith delayed her request for relief for over two years. As a result, the grounds for setting aside the default judgment have considerably diminished. It can now be set aside only if it is void. It is not. We therefore affirm it.

## FACTS

The law firm filed a suit against Smith for unpaid legal fees on December 6, 2010. The complaint stated causes of action for breach of contract and three common counts: services rendered, money owed, and open book account. The complaint prayed for $57,682 in damages. Smith was personally served with the summons and complaint on December 15 at an address in Torrance. Smith did not answer, and the law firm filed a request to enter default on January 11, 2011. The proof of mail service attached to the request had the correct street address, but the wrong city – Long Beach instead of Torrance.[1] The law firm filed a request for entry of a clerk's judgment on January 26, 2011, but the request was defective: the space for the defendant's name was left blank.

Evidently the clerk did not enter a default judgment against Smith, because the next docket entry is a case management conference, scheduled for May 2011. The law firm filed a case management conference statement, this time serving it on Smith at the address in Torrance reflected in the original proof of service. The minute order issued at the May conference stated, "Defendant is making payments to plaintiff." The case management conference was continued to August. Smith personally appeared at the August conference, which was continued again to September.

---

[1] The zip code, however, was the one for the Torrance address.

On August 24, 2011, the law firm dismissed the common counts for services rendered and money owed. It filed another request to enter a clerk's default judgment, this time with the right address and Smith's name included in the correct spot. It served the request for judgment on Smith at the Torrance address. The clerk entered a default judgment for $57,682 in damages, $4,076 in interest, and $485 in costs, for a total of $62,244, on August 24. The law firm waived attorney fees.

Smith filed a motion to vacate the default and the default judgment on October 3, 2013, more than two years after entry of the judgment.[2] The motion was denied.

## DISCUSSION

Code of Civil Procedure[3] section 585 provides in pertinent part: "Judgment may be had, if the defendant fails to answer the complaint, as follows: [¶] (a) In an action arising upon contract or judgment for the recovery of money or damages only, if the defendant has . . . been served, other than by publication, and no answer . . . has been filed with the clerk of the court within the time specified in the summons . . ., the clerk, upon written application of the plaintiff, and proof of the service of summons, shall enter the default of the defendant . . . so served, and immediately thereafter enter judgment for the principal amount demanded in the complaint. . . , or a lesser amount if credit has been acknowledged, together with interest allowed by law or in accordance with the terms of the contract, and the costs against the defendant . . . ."[4]

_____

[2]     In the intervening years, the law firm had unsuccessfully tried to pull off a writ of execution and judgment debtor examination.

[3]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[4]     California Rules of Court, rule 3.110 requires a party to file a request to enter default within 10 days after the time to respond has elapsed, if no response has been served, and to obtain a default judgment within 45 days of the entry of default. The rule also provides for an order to show cause re sanctions to be issued for failure to observe these time limits. "The provision that the clerk must enter the judgment 'immediately' after entering default is merely directory. His failure to do so may renter him liable to an action by the judgment creditor, but does not render void the judgment subsequently entered upon such default, nor can the defendant against whom the judgment is entered invoke such failure for the purposes of annulling a judgment to which he has no other defense." (*Edwards v. Hellings* (1894) 103 Cal. 204, 207.)

Section 473, subdivision (b) provides in pertinent part:  "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect.  Application for this relief . . . shall be made within a reasonable time, *in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken.* . . .  No affidavit or declaration of merits shall be required of the moving party."  (Italics added.)

Smith did not bring her motion to set aside the default judgment within six months after it was entered.  She is not entitled to relief under the statute.  "Once six months have elapsed since the entry of a judgment, 'a trial court may grant a motion to set aside that judgment as void only if the judgment is void on its face.'  [Citation.]" (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 496.)

The court may set aside a void judgment under section 473, subdivision (d). The court may also employ its equitable authority to set aside a judgment procured by extrinsic fraud or mistake.  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981-982; *In re Margarita D.* (1999) 72 Cal.App.4th 1288, 1294-1295.)  Whether a judgment is void is reviewed de novo.  (*Talley v. Valuation Counselors Group*, *Inc.* (2010) 191 Cal.App.4th 132, 146.)

Smith makes several arguments on appeal as to why the default judgment is void.  She argues that the default did not qualify for a clerk's judgment because it did not meet the requirements of section 585 subdivision (a).  She further argues that the mistake about the address on the request for entry of default renders the judgment void.  She asserts that minute orders entered after the various case management conferences render the judgment void and that prejudgment interest was improperly added to the judgment. Finally, she challenges the entry of default and the default judgment on the ground her mental incapacity renders them both void.

4

## I.           Entry of Clerk's Judgment

Smith argues that the clerk did not have the power to enter a judgment because the amount owing required computation.  A default judgment entered by the clerk is void if the amount cannot be ascertained from the complaint, without any accounting or exercise of discretion.  (*Lynch v. Bencini* (1941) 17 Cal.2d 521, 525.)

A clerk may enter a default judgment based on an open book account.[5] (*Liberty Loan Corp. of North Park v. Petersen* (1972) 24 Cal.App.3d 915, 918 (*Liberty Loan*).)  Even if only one cause of action supports a clerk's judgment, the judgment is properly entered on that cause of action.  (*Ibid*.)

One of the causes of action of the law firm's complaint was based on a book account in the express amount of $57,682.76.  It was within the clerk's power under section 585, subdivision (a), to enter judgment on that cause of action.  The requirement that the clerk plaintiff attach a copy of the contract applies to negotiable instruments, not to simple contracts.  (*HSBC Bank Nevada, N.A. v. Aguilar* (2012) 205 Cal.App.4th Supp. 6, 10; see Cal. Rules of Court, rule 3.1806.)

Smith's reliance on *Brown v. Superior Court* (1966) 242 Cal.App.2d 519 (*Brown*), is misplaced.  The attorney fee contract in *Brown* provided for payment at an hourly rate, plus a 20 percent contingency payment for successfully reducing the client's taxes.  (*Id.* at p. 523, fn. 1.)  The attorney's complaint alleged "no settlement and no final determination of the tax liability; only an unaccepted proposal and an ex parte prediction

---

[5]      Section 337a defined "book account" as "a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner."

"In this age of computer accounting, it is unlikely that a court would require that a book account actually be kept in a book; certainly computer memory is a reasonable substitute for the pages of a book, given that the data stored therein can always be reduced (or, more precisely, enlarged) to writing." (*Interstate Group Administrators, Inc. v. Cravens, Dargan & Co.* (1985) 174 Cal.App.3d 700, 708, fn. 4.)

of a future final settlement embodying 'potential savings.'" (*Id.* at p. 525.) Moreover, the client was being sued for the reasonable value of legal services, having allegedly wrongfully discharged the attorney.[6] (*Ibid.*) Even though the complaint also alleged a common count for account stated, the reviewing court held that this was not a separate cause of action, but only a separate theory of recovery based on the contingency fee agreement. "No matter how many theories real party in interest chose to plead, she stated only one cause of action, which was a claim for the reasonable value of the attorney's services." (*Ibid.*) The clerk could not enter a judgment for an amount based on reasonable value.

The law firm's claim for attorney fees in this case does not rest on the reasonable value of its services, but rather a specific amount pleaded as an open book account.[7] This amount in turn is based on a retainer fee and an hourly rate, as alleged in the breach of contract cause of action. By failing to answer, Smith in effect "confessed" that the law firm performed the work necessary to earn this fee. (See *Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823 [failure to answer expressly admits facts pleaded in complaint].) The clerk was not called upon to determine the reasonable value of the law firm's services or even to perform any computations, but rather to enter judgment in the exact amount pleaded in the complaint. Section 585, subdivision (a), authorizes this procedure.

---

[6] If a lawyer employed on contingency "elects to sue for damages without establishing the contingency, he is limited to the reasonable value of his actual services." (*Brown, supra,* 242 Cal.App.2d at p. 525.)

[7] Smith argues that the amount is uncertain because part of it consisted of a "true retainer fee," which the Rules of Professional Conduct define as one "paid solely for the purpose of ensuring the availability of the member for the matter." (Rules Prof. Conduct, rule 3-700(D)(2).) Smith asserts that such a fee cannot form part of an open book account.

The Code of Civil Procedure's definition of book account describes a method of keeping track of debits and credits. It is not limited to any particular kind of goods or services. The references in the statutory definition to a "fiduciary" as a potential creditor strongly suggest that lawyers can keep book accounts.

**II.          The Address Error**

Smith asserts that the error in the proof of service for the entry of default form – Long Beach instead of Torrance – renders the default and the judgment void. The Code of Civil Procedure says otherwise.

Section 587 provides in pertinent part, "No default under subdivision (a), (b), or (c) of Section 585 or Section 586 shall be entered, unless the affidavit is filed.[8] The nonreceipt of the notice shall not invalidate or constitute ground for setting aside any judgment." The requirement of an affidavit of mailing is not jurisdictional; the failure to file one does not deprive the trial court of the power to render judgment. (*Rodriguez v. Henard* (2009) 174 Cal.App.4th 529, 536.) So long as the defendant has knowledge of the default proceeding, an error in the address is not prejudicial. (*Ibid.*) Although a judge might take the incorrect address into account in deciding whether to grant discretionary relief under section 473, the error does not render the judgment void.

In this case, Smith clearly knew that a default judgment was in the works. She appeared at a case management conference in August 2011, notwithstanding the entry of default against her, *before* the default judgment was entered. The statement served on her in connection with the conference in April referred several times to a default and a default judgment. Moreover, Smith did *not* assert that she did not receive the entry of default document. She stated in the declaration supporting her motion to set aside the judgment that she did not *recall* getting it. On appeal, she argues that her mental incapacity prevented her from knowing whether she received the request to enter default.

Even if Smith had asserted that the mailing error resulted in her not receiving the entry of default form, the Code of Civil Procedure specifically provides that

---

[8]      The "affidavit" refers to an affidavit that a copy of the application for entry of default was mailed to the defendant at the last known address or to his or her counsel. (§ 587.)

such an error is not a basis for setting aside a judgment of default.  It does not render the judgment void.

**III.**         **The Case Management Conference**

At the August 2011 case management conference, which was continued to September, the court ordered the law firm to "file a case management statement, assess sanctions or file notice of settlement."  Smith now argues that these orders prohibited the clerk from entering a default judgment; therefore the judgment is void.

Once again, Smith is confusing the relief that might be granted under section 473 and the showing she must make to set aside a void judgment.[9]  A judgment is void for only a few reasons.  Lack of personal jurisdiction or of subject-matter jurisdiction is the most basic one.  (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1239 (*Rochin*); see § 1917.)  A default judgment in particular is void to the extent that it awards an amount greater than what the complaint alleges, although the usual method of dealing with this error on appeal is to modify the judgment accordingly.  (*Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 495.)  Likewise, a default judgment that awards relief different from that sought in the complaint is void.  (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 539.)  A default judgment based on a complaint that fails to state a cause of action is void.  (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 282.)  If a clerk jumps the gun and enters a default prematurely, a judgment based on that default is void.  (*Baird v. Smith* (1932) 216 Cal. 408, 410.)   In a personal injury or wrongful death action, a default judgment is void if the plaintiff did not serve a statement of damages as required by section 425.11, subdivision (c).  (*Schwab v. Rondel Homes* (1991) 53 Cal.3d 428, 435.)  None of these instances of a void judgment is present here.

_____

[9]   By the same token, the law firm confuses the factors to be considered in determining whether a default judgment should be set aside.  The law firm argues that the judgment should stand because of the efforts it has made subsequent to entry to collect.  If the judgment is void, it matters not what the law firm has done to enforce it.

The orders made at the case management conference did not divest the court of jurisdiction, prohibit the law firm from requesting the clerk enter a default judgment, or prevent the judgment from being entered. They certainly did not, as Smith now claims, grant her an extension of time to plead. She was already in default when the case management conference took place. She actually had no right to be there, let alone to obtain relief from default without making an appropriate motion. (See *Garcia v. Politis* (2011) 192 Cal.App.4th 1474, 1479 [entry of default terminated defendant's right to participate in litigation].) The orders did not make the default judgment void.

Smith also seizes on a phrase in a minute order issued in May 2011 that she was making payments to the law firm and argues that the clerk was precluded from entering judgment because a judge had to hear evidence about how much she had paid. When it denied her motion to vacate the default judgment, the court ordered the law firm "to credit to defendant any payments made by her reducing the judgment by way of partial satisfaction of judgment."

Once again, the case management minute order did not render the default judgment void. The clerk could tell from the complaint the exact amount of the book account; no computation was necessary. Entry of judgment was thus within the clerk's ministerial power. If Smith had in fact been making payments (and nothing filed with the motion to vacate suggested she had been), these would be credited to her, as the court ordered, by the law firm's filing the Judicial Council form for acknowledgement of satisfaction of judgment, which would happen in any event *after* the entry of judgment.

By the time of the hearing on Smith's motion, the judgment had already been outstanding for over two years. The order to file a partial satisfaction of judgment to account for any credits did not render it void.

IV.        **The Interest Award**

Smith's first argument with respect to the inclusion of interest in the default judgment is that the complaint did not pray for prejudgment interest. The law firm did

not allege that its contract with Smith permitted an award of prejudgment interest. Smith then asserts, without any citation to authority, that the inclusion of prejudgment interest renders the default judgment void.

The complaint prayed for interest on the sum of $57,682 "at the highest legal rate." Entitlement to prejudgment interest is set by statute. It is not dependent on provisions in a contract, but is awarded as a matter of law. (See *Leff v. Gunter* (1983) 33 Cal.3d 508, 519-520.) Statutory interest is properly awarded as part of a default judgment. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1209; § 585, subd. (a) [after entry of default, "the clerk . . . shall . . . enter judgment for the principal amount demanded in the complaint . . . together with interest allowed by law . . ."].) Pursuant to Civil Code section 3289, subdivision (b), a contractual obligation bears interest at 10 percent after a breach if the contract does not stipulate a legal rate of interest. Pursuant to Civil Code section 3287, subdivision (a), a creditor may recover interest on "damages certain, or capable of being made certain by calculation." The damages pleaded in the law firm's complaint were "certain." The law firm was entitled to prejudgment interest.

Smith also argues that she was prejudiced by the delay between the entry of default (in January 2011) and the entry of the default judgment (in August 2011) because the delay allowed prejudgment interest to accrue. While this fact could be presented to the trial court on a motion for relief under section 473, it does not render the clerk's judgment void. Interest compensates the creditor for the loss of use of its money while the debt goes unpaid. (*Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 814.) The party being prejudiced by delay is the creditor, not the debtor.

Finally, Smith objects to the amount of interest awarded because it was based on a declaration filed by the law firm's counsel. The declaration stated that the law firm sought interest in the amount of $4,076.40, which figure represented 10 percent of $57,682 ($15.80 per day) for 258 days, from the date the complaint was filed (December 6, 2010) through August 21, 2011, a few days before the filing of the request for default

10

judgment. Smith argues that the clerk was not entitled to rely on this declaration when entering the judgment.

The clerk may enter a default judgment when "no evidence is necessary to disclose the correct amount," e.g., on an open book account. (*Liberty Loan, supra,* 24 Cal.App.3d 915, 918.) The statute authorizing the clerk to enter a default judgment requires him or her to include interest "allowed by law." (§ 585, subd. (a).) The clerk can make the mathematical computations or simply check the ones submitted by the plaintiff, the latter being easier on the clerk. These calculations are not "evidence." No exercise of discretion is necessary to ascertain the daily amount of interest on $57,682 at 10 percent.

The core of Smith's problem is that she waited too long to seek relief. Facts and arguments that might have convinced a judge to set aside the default judgment were foreclosed once the six-month period allowed by section 473 expired. She had an attorney in September of 2011; she could have brought a motion within the statutory time period. After that, the grounds for setting aside the judgment became far more stringent.

We should also point out that even if the default judgment were set aside as void, Smith's position would not be much improved. Setting aside a default judgment does not affect the basic default. (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1743; *Brown, supra,* 242 Cal.App.2d at p. 526.) All that would happen is that the matter would be sent back for a default prove-up, one in which Smith would not be entitled to participate. (See *Jones v. Moers* (1928) 91 Cal.App. 65, 69-70; 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 175, p. 617.)

## V.        Smith's Mental State

Smith sought to set aside both the entry of default and the default judgment as void on the ground of her mental state. She presented evidence she was undergoing

11

mental health treatment between 2001 and 2007.  Although the letters listed several mental conditions, none of them indicated she lacked mental capacity.[10]

Probate Code section 810, which deals with legal mental capacity, establishes a rebuttable presumption "that all persons have the capacity to make decisions and to be responsible for their acts or decisions." (Prob. Code, § 810, subd. (a).)  A judicial determination that a person lacks the legal capacity to perform a specific act "should be based on evidence of a deficit in one or more of the person's mental functions rather than on a diagnosis of a person's mental or physical disorder." (*Id.*, subd. (c).)  Probate Code section 811 sets out a list of mental functions; evidence of a deficit in at least one of the functions and evidence of a correlation between the deficit and the act or decision in question support a determination of unsound mind.

As stated in Evidence Code section 522, "The party claiming that any person, including himself, is or was insane has the burden of proof on that issue."  A person is presumed sane, and his or her failure to respond to the demands of litigation on the grounds of mental incapacity must be established by competent evidence. (*Frates v. Treder* (1967) 249 Cal.App.2d 199, 204-205.)

As our Supreme Court has stated, until a person has been judicially declared to be of unsound mind and had a guardian ad litem appointed, "personal service upon the alleged incompetent is sufficient to give the court jurisdiction of her person [citation], and a judgment obtained against the incompetent under such circumstances is not void for want of jurisdiction. [Citations.]" (*Olivera v. Grace* (1942) 19 Cal.2d 570, 576.)  A default judgment can be set aside for extrinsic fraud if the plaintiff knows the defendant is incompetent – that is, "render[ed] wholly devoid of understanding and incapable of transacting business of any nature" (*id.* at p. 577) – and conceals this information from the court in order to prevent a true adversary hearing. (*Ibid.*)  In this

---

[10] We understand Smith's argument to be that she lacked the mental capacity to respond to the complaint, not that she lacked the mental capacity to enter into a contract with the law firm.

12

case, however, there is no evidence the law firm knew anything about Smith's mental state at all, let alone knew she was wholly devoid of understanding and needed a guardian ad litem.

The trial court found that Smith had not offered a viable reason for her delay, including, presumably, her claimed mental incompetence, and we must draw all reasonable inferences to support the judgment. (*Burgess v. Security-First Nat. Bank* (1941) 44 Cal.App.2d 808, 816.) We know, for example, that Smith was present at the case management conference in August 2011, without a lawyer, and the court had an opportunity to observe her behavior then. The court found the letters she had submitted about her therapy irrelevant, because they referred to a time well before the events after the entry of the default or the default judgment. Smith did not present evidence of mental incapacity that would render the judgment entered against her in August 2011 void.

## DISPOSITION

The default judgment is affirmed. Respondent is to recover its costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.

13