Filed 12/6/23  Vincenzi v. CKS Prime Investments CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| IVANA VINCENZI, <br><br> Cross-complainant and Appellant, <br><br> v. <br><br> CKS PRIME INVESTMENTS, LLC, <br><br> Cross-defendant and Respondent. | H050334 <br> (Santa Clara County <br> Super. Ct. No. 22CV393435) |

Cross-complainant Ivana Vincenzi received a $5,000 loan from a lender on the Internet.  She failed to repay the loan, and the debt was sold to cross-defendant CKS Prime Investments, LLC (CKS).  CKS filed a limited civil action to collect the debt, attaching a loan summary and borrower agreement as evidence of the debt.  Vincenzi cross-complained, alleging violations of the Fair Debt Buying Practices Act (Civ. Code, § 1788.50 et seq.) and the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.).  Vincenzi alleged that CKS violated those statutes by, among other things, filing a debt collection action without having control of the promissory note for the debt.  The trial court granted CKS's motion to strike the cross-complaint under the anti-SLAPP statute.[1]  We will affirm the order granting the motion to strike because CKS's debt collection action was protected activity and Vincenzi did not demonstrate a probability of prevailing on her claims.

---

[1]  Code of Civil Procedure section 425.16.  SLAPP refers to a Strategic Lawsuit Against Public Participation.

# I.    TRIAL COURT PROCEEDINGS

CKS filed a limited civil debt collection action against Vincenzi in 2022.  CKS alleged it purchased debt owed by Vincenzi on a specified loan account whose original creditor was WebBank.  CKS alleged it was the sole owner of the debt, and that it purchased the debt after charge-off.  The complaint alleged causes of action for breach of contract and to collect on an open book account.  Among other things, the complaint sought $5,233.99 in damages.

Two exhibits were attached to the CKS complaint.  Exhibit A was described in the complaint as a "Billing Statement and/or Loan File."  The first page of Exhibit A is titled "Loan Summary" and includes a footer indicating the summary was created in December 2018.  (Capitalization omitted.)  According to the summary, Vincenzi signed a borrower agreement on January 2, 2018; the loan was issued on January 4, 2018; the original loan amount was $5,000; and the principal balance due as of December 2018 was $4,639.03.  The next page of Exhibit A, titled "Borrower Agreement," describes the process by which a borrower may request a loan from WebBank through the website www.lendingclub.com.  (Capitalization omitted.)  The agreement states that any loan approved through that website would be governed by the terms of a loan agreement and promissory note, an example of which was attached to the borrower agreement.  A condition of receiving a loan through the website was granting LendingClub Corporation (LendingClub; the corporate operator of the website) a limited power of attorney to complete and execute a loan agreement and promissory note for the borrower if the borrower's loan application was approved.  The sample loan agreement and promissory note indicated the loan would be between the borrower and WebBank, and would be governed by Utah law.  Exhibit B was described in the complaint as a "Final Billing Statement and/or Transaction History."  It contains the same loan identification number as referenced in Exhibit A, includes Vincenzi's name, and lists the last payment received as having been made in May 2018.

Vincenzi cross-complained two months later. The cross-complaint states Vincenzi was "alleged to have incurred a financial obligation in the form of a consumer credit account issued by WEBBANK." The cross-complaint alleged, on information and belief, that the debt was treated as a loss or expense and became charged-off consumer debt. It further alleged on information and belief that the debt was sold to CKS but that "control of the electronic promissory note was never transferred." It alleged that because the debt is evidenced by an electronic promissory note, it could not form the basis of an open book account cause of action under California law. The cross-complaint alleged two causes of action, one for violations of the Fair Debt Buying Practices Act (Civ. Code, § 1788.50 et seq.) and another for violations of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.). (Unspecified statutory references are to the Civil Code.) Both causes of action were based on CKS's attempt to collect debt despite allegedly not controlling the electronic promissory note evidencing that debt.

CKS moved to strike the cross-complaint under the anti-SLAPP statute. CKS attached a bill of sale reflecting CKS's purchase of multiple accounts, including an account with the same last four digits and creation date as Vincenzi's loan. Vincenzi opposed the motion. In a supporting declaration, Vincenzi acknowledged that she entered into the borrower agreement with WebBank through www.lendingclub.com; that she was approved for a loan on January 4, 2018; and that she had stopped making payments on the debt.

Vincenzi's attorney stated in a declaration that his office "served discovery requests on CKS, consisting of a Demand for Copy of Items of Account, numerous Form Interrogatories, Special Interrogatories, Request for Production of Documents and Electronically Stored Information, and Requests for Admission." The declaration asserts CKS "served unverified discovery responses consisting of mostly boilerplate objections, and produced no documents." Neither the discovery requests nor CKS's responses were attached to the declaration. The attorney's declaration describes filing "several class

3

action lawsuits against purported assignees of consumer loans originated by WebBank through" the LendingClub website (capitalization omitted) and taking the deposition of the person most knowledgeable for LendingClub Corporation in one of those lawsuits that did not involve CKS. An excerpt from the deposition transcript was attached to the declaration, including testimony that under the "pre-agreed upon documents at the time of sale" of accounts in that case, a "copy of the promissory note is not provided at the time of sale." The deponent continued that if a "copy of the promissory note is requested after the sale, it can be provided."

The trial court granted the special motion to strike by written order. The court sustained CKS's objection to the deposition excerpt, finding it irrelevant because it related to the terms of a contract between LendingClub and another entity (not CKS) and therefore had "no bearing on any issues raised in connection with the pending motion." The court found that CKS's debt collection action was protected activity under the first step of the anti-SLAPP statute.

Turning to the second step of the anti-SLAPP analysis (Vincenzi's likelihood of prevailing on her cross-complaint), the trial court determined that the documents attached to CKS's complaint evidenced the debt, satisfying section 1788.52, subdivision (b). The court acknowledged Vincenzi's assertion that CKS did not control the promissory note, but concluded Vincenzi failed to meet her step two burden as to either cause of action because she did not present any evidence that CKS lacked control of the promissory note. The court also concluded that Vincenzi did not demonstrate a probability of prevailing on her argument that an open book account cause of action could not be based on a written contract as a matter of law.

## II.    DISCUSSION

A litigant may file a special motion under the anti-SLAPP statute to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection

4

with a public issue." (Code Civ. Proc., § 425.16, subd. (b)(1).) The anti-SLAPP statute provides litigants with a "procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056.) Rather than insulate litigants from any liability for claims arising from protected activity, the anti-SLAPP statute "provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

Courts evaluate anti-SLAPP motions in a two-step process. We review de novo a trial court's decision on an anti-SLAPP motion (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*)), as well as any associated questions of statutory construction (*Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 658 (*Segal*)). The moving party has the burden to show the challenged claims arise from protected activity. If the moving party meets that burden, in the second step the nonmoving party must show a likelihood of prevailing on the merits.

## A. STEP ONE: THE DEBT COLLECTION ACTION IS PROTECTED ACTIVITY

It is undisputed that the cross-complaint arises from CKS's filing of its complaint and its statements in the complaint. That conduct implicates two categories of protected activity specified in the anti-SLAPP statute: a written statement made before a judicial proceeding, and a written statement made in connection with an issue under consideration by a judicial body. (Code Civ. Proc., § 425.16, subd. (e)(1), (e)(2); see, e.g., *Aguilar v. Mandarich Law Group, LLP* (2023) 87 Cal.App.5th 607, 620.)

Vincenzi argues that an action alleging violations of the Fair Debt Buying Practices Act cannot be challenged as a SLAPP as a matter of law. Her theory is that the anti-SLAPP statute conflicts with the Fair Debt Buying Practices Act, and the more specific and later-enacted Fair Debt Buying Practices Act must prevail over the more general and earlier-enacted anti-SLAPP statute. (Citing *Collection Bureau of San Jose v.*

5

*Rumsey* (2000) 24 Cal.4th 301, 310 (*Collection Bureau*).) We have found no published authority analyzing this issue.

The fundamental purpose of statutory construction is to ascertain the intent of the Legislature to effectuate the purpose of the law. (*People v. Pieters* (1991) 52 Cal.3d 894, 898.) When presented with conflicting statutes, "we strive to harmonize them so as to give effect to each." (*Collection Bureau*, *supra*, 24 Cal.4th at p. 310.) It is only when two statutes cannot be harmonized that the principles of statutory construction Vincenzi identifies come into play. (See *ibid.* ["If conflicting statutes cannot be reconciled, later enactments supersede earlier ones ([citation]), and more specific provisions take precedence over more general ones"].)

Vincenzi contends the statutory schemes' attorney's fee provisions demonstrate an irreconcilable conflict. Under the Anti-SLAPP law, a prevailing moving party "shall be entitled to recover that [party's] attorney's fees and costs" (Code Civ. Proc., § 425.16, subd. (c)(1)); a prevailing nonmoving party is entitled to attorney's fees only if the trial court finds the motion to strike was frivolous or solely intended to cause unnecessary delay. (*Ibid.*)

The Fair Debt Buying Practices Act imposes requirements on debt buyers who seek to collect debt in California. Under those statutes, a debtor is entitled to reasonable attorney's fees in the "case of any successful action to enforce liability" under the Fair Debt Buying Practices Act. (§ 1788.62, subd. (c)(1).) A prevailing debt buyer is entitled to attorney's fees only "upon a finding by the court that the [debtor's] prosecution of the action was not in good faith." (§ 1788.62, subd. (c)(2).)

We see no irreconcilable conflict between the two statutes. To be sure, there is overlap in the subject matter covered by the two statutory schemes: The anti-SLAPP statute applies to written statements made in connection with an issue under consideration by a judicial body (Code Civ. Proc., § 425.16, subd. (e)(1), (e)(2)), while the Fair Debt Buying Practices Act regulates the content of debt collection complaints. (§ 1788.58.)

6

But that overlap does not mean the two statutes irreconcilably conflict. Harmonizing the two statutory schemes, debtors may file actions alleging violations of the Fair Debt Buying Practices Act and debt buyers may move to strike those actions under the anti-SLAPP statute. Vincenzi points to no legislative history indicating legislative intent to exempt actions alleging violations of the Fair Debt Buying Practices Act from the anti-SLAPP statute. The anti-SLAPP statute expressly exempts other types of actions (see Code Civ. Proc., §§ 425.16, subd. (d); 425.17, subds. (b), (c))[2], and the absence of Fair Debt Buying Practices Act actions from those subdivisions suggests legislative intent not to exempt those actions from the anti-SLAPP statute. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [" 'We must assume that the Legislature knew how to create an exception if it wished to do so.' "].)

Vincenzi argues that the statutes conflict because a prevailing anti-SLAPP movant is entitled to attorney's fees as a matter of right whereas a debt buyer who prevails in a Fair Debt Buying Practices Act action is entitled to attorney's fees only on a showing that the action was "not in good faith." (Compare Code Civ. Proc., § 425.16, subd. (c)(1) with § 1788.62, subd. (c)(2).) But the fee provisions pertain to different stages of litigation. Anti-SLAPP motions are meant to be filed early in litigation to weed out meritless complaints, and the Legislature could rationally conclude that prevailing anti-SLAPP movants are entitled to attorney's fees incurred up to that point. The Fair Debt Buying Practices Act's attorney's fee provision applies at the end of an action, at which point greater attorney's fees may have been incurred. The Legislature could rationally conclude that fee-shifting at that later stage of proceedings should occur only on a showing of bad faith. We conclude the attorney's fee provisions do not indicate a

---

[2] Code of Civil Procedure section 425.17, subdivision (b) states the anti-SLAPP statute does not apply to an action "brought solely in the public interest or on behalf of the general public" if certain conditions are met. Vincenzi did not argue that any Code of Civil Procedure section 425.17 exception applied to her case.

7

legislative intent to exempt Fair Debt Buying Practices Act actions from the anti-SLAPP statute.

Vincenzi contends the "Legislature cannot have intended to enact a statute specifically to regulate debt buyer *litigation activity*, to be enforced by consumer debtors acting as private attorneys-general, but which immediately subjects these consumers to anti-SLAPP motions." (Boldface omitted.) She cites no authority for that proposition, nor does she cite any legislative history supporting that interpretation. Vincenzi's argument about the wisdom of the statutes is ultimately a matter for the Legislature. (See *Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 26.)

## B. STEP TWO:  VINCENZI DID NOT SATISFY HER BURDEN

Given that the challenged claims arose from protected activity, it was Vincenzi's burden in the second step to show a likelihood of prevailing on the merits. (*Wilson*, *supra*, 7 Cal.5th at p. 884.) Vincenzi's cross-complaint alleged two causes of action, one for violations of the Fair Debt Buying Practices Act and another for violations of the Rosenthal Fair Debt Collection Practices Act.

### 1.  Vincenzi Did Not Show CKS Lacks Control of the Debt

The factual premise for Vincenzi's cross-complaint is that CKS does not possess or control the completed loan agreement and promissory note evidencing the debt. Although it is undisputed that neither the completed loan agreement nor the promissory note is part of the record, it does not necessarily follow that Vincenzi has shown a probability of prevailing on that theory. Vincenzi argues she demonstrated a probability of prevailing based on three things:  (1) CKS's failure to attach a copy of the promissory note to the debt collection complaint; (2) CKS's alleged failure to produce that document in discovery; and (3) the deposition testimony of a LendingClub employee in a different lawsuit not involving CKS. We address each argument in turn.

First, CKS's decision not to attach a copy of the promissory note to its debt collection complaint does not establish it lacks possession or control of that document.

8

As we will discuss, CKS did not violate the Fair Debt Buying Practices Act or the Rosenthal Fair Debt Collection Practices Act merely by attaching documents other than the promissory note. While the promissory note would be the clearest evidence of the debt, CKS's decision not to attach the promissory note, without more, is not a " ' "sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89.)

Second, Vincenzi cites her attorney's declaration that his office "served discovery requests on CKS, consisting of a Demand for Copy of Items of Account, numerous Form Interrogatories, Special Interrogatories, Request for Production of Documents and Electronically Stored Information, and Requests for Admission." He further declared that CKS "served unverified discovery responses consisting of mostly boilerplate objections, and produced no documents." But neither the discovery requests nor the responses were attached to the declaration. Without those documents, we have no way to determine what discovery Vincenzi actually requested, and Vincenzi has not shown prima facie facts necessary to meet her step two burden.

Third, the trial court sustained CKS's relevance objection to certain deposition testimony Vincenzi cites on appeal, reasoning that testimony about the terms of a contract between LendingClub and another company to purchase debt had "no bearing on any issue[s] raised in connection with the pending motion." Vincenzi acknowledges in her opening brief that the trial court excluded the evidence, but she makes no argument there to challenge that decision. Vincenzi belatedly argues in her reply brief that the trial court's "decision to exclude evidence that would be admissible at trial, which would tend to support Vincenzi's position, is contrary to the anti-SLAPP standard and requires reversal." (Capitalization omitted.) Vincenzi has forfeited her challenge to the trial court's decision to exclude the evidence. (*People v. Ng* (2022) 13 Cal.5th 448, 568,

9

fn. 13 ([" 'It is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party.' "].)

Even if the argument had been preserved, we see no abuse of discretion in excluding the deposition testimony regarding the terms of an agreement between LendingClub and another corporation to purchase debt. Vincenzi did not offer evidence indicating the terms of CKS's bill of sale to purchase debt from LendingClub was the same or even similar to LendingClub's agreement with the company involved in the other case.

Given that Vincenzi provided no relevant evidence to support her bare allegation that CKS did not control the electronic promissory note, the trial court properly concluded that Vincenzi had not satisfied her burden to show a probability of prevailing on that theory. We emphasize that our decision does not restrict Vincenzi from developing and asserting as a potential defense in the debt collection action that CKS does not control her debt. But in the context presented here, Vincenzi has not demonstrated a probability of prevailing on that theory.

### 2. Attachments to the Debt Collection Complaint Evidence Vincenzi's Agreement to the Debt

Vincenzi alleges in her Fair Debt Buying Practices Act cause of action that the documents CKS attached to its complaint do not satisfy sections 1788.52, subdivision (b) (section 1788.52(b)) or 1788.58, subdivision (b). Section 1788.52(b) states, in relevant part: "A debt buyer shall not make any written statement to a debtor in an attempt to collect a consumer debt unless the debt buyer has access to a copy of a contract or other document evidencing the debtor's agreement to the debt. If the claim is based on debt for which no signed contract or agreement exists, the debt buyer shall have access to a copy of a document provided to the debtor while the account was active, demonstrating that the debt was incurred by the debtor." (§ 1788.52(b).) Section 1788.58, subdivision (b) states: "A copy of the contract or other document described in subdivision (b) of

10

Section 1788.52 shall be attached to the complaint."  An issue of statutory interpretation presents a question of law which we review de novo.  (*Segal*, *supra*, 12 Cal.5th at p. 658.)

We agree with the trial court that the documents CKS attached to its complaint, considered as a whole, satisfy sections 1788.52(b) and 1788.58, subdivision (b). Exhibit A to the complaint included a loan summary, borrower agreement, and sample loan agreement/promissory note.  The loan summary shows Vincenzi signed a borrower agreement on January 2, 2018; the loan was issued on January 4, 2018; the original loan amount was $5,000; and the principal balance due as of December 2018 was $4,639.03. The borrower agreement describes the process by which a borrower can request a loan through the LendingClub website.  Attached to the borrower agreement was a sample loan agreement and promissory note stating the terms of any loan approved through the website.  The foregoing, considered together, amounts to a "document evidencing the debtor's agreement to the debt" (§ 1788.52(b)), including all terms of the debt at issue, satisfying sections 1788.52 and 1788.58.  Vincenzi therefore did not demonstrate a probability of prevailing on her Fair Debt Buying Practices Act cause of action.

Vincenzi contends the loan agreement and promissory note is the *only* document that can satisfy sections 1788.52 and 1788.58.  To the contrary, section 1788.52(b) requires a debt buyer to have access to a "copy of a contract *or other document* evidencing the debtor's agreement to the debt."  (Italics added.)  We interpret the italicized language as allowing a debt buyer to evidence a debtor's agreement to debt by means other than a copy of a signed contract, even when a contract evidencing the debt exists.

Vincenzi argues the language "or other document evidencing the debtor's agreement to the debt" in section 1788.52(b) applies only when the debt was not the subject of a signed contract.  But section 1788.52(b) separately addresses claims "based on debt for which no signed contract or agreement exists," requiring in that situation that the debt buyer have "access to a copy of a document provided to the debtor while the

11

account was active, demonstrating that the debt was incurred by the debtor." We interpret "copy of a contract or other document evidencing the debtor's agreement to the debt" as providing debt buyers with multiple methods of evidencing a debt. The statute protects consumers by requiring proof that a debt exists, while providing debt buyers some flexibility in the form of that proof.

Vincenzi notes that neither the borrower agreement nor the loan summary, standing alone, satisfies section 1788.52(b). While that may be so in isolation, when considered together the documents satisfy the statute for the reasons we have summarized.

Vincenzi argues that because a promissory note is a negotiable instrument, "there is no other document besides the promissory note which can 'evidence' an agreement to the debt." (Citing Cal. U. Com. Code, § 9102, subd. (a)(47) [" 'Instrument' means a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment."]; Utah Code Ann. § 70A-9a-102(47)(a).) But those Commercial Code definitions of the term "instrument" have no impact on the plain language of section 1788.52(b).

Vincenzi also asserts the trial court "failed to address" that the "Borrower Agreement merges into the Loan Agreement and Promissory Note once the loan is originated" such that those are the only documents with the final terms of the debt. (Underscoring omitted.) But which document contains the final terms of the debt is a different question than whether the documents attached to the debt collection complaint satisfy section 1788.52(b).

### 3. Rosenthal Fair Debt Collection Practices Act Allegations Similarly Fail

Vincenzi contends CKS made false statements to collect a debt, which would violate the Rosenthal Fair Debt Collection Practices Act. Section 1788.17 incorporates

provisions of the federal Fair Debt Collection Practices Act, including 15 U.S.C. § 1692e. Among other things, that section prohibits debt collectors from making false representations about the "character, amount, or legal status of any debt" (15 U.S.C. § 1692e(2)(A)); threatening to "take any action that cannot legally be taken" (15 U.S.C. § 1692e(5)); and using "any false representation or deceptive means to collect or attempt to collect any debt" (15 U.S.C. § 1692e(10)). Section 1788.13, subdivision (l) also prohibits any "communication by a licensed collection agency to a debtor demanding money unless the claim is actually assigned to the collection agency."

Vincenzi's Rosenthal Fair Debt Collection Practices Act allegations are based on the same theories we have addressed and rejected. She contends that if the documents attached to CKS's debt collection complaint did not satisfy section 1788.52(b), then CKS made false statements about its compliance with that section as well as the character and legal status of the debt. She also contends CKS took legal action that it could not legally take to collect a debt and demanded money without the claim actually being assigned to it because CKS sued "without actual possession or control of the instrument." As we have explained, Vincenzi did not demonstrate a probability of prevailing on either of those theories. As such, the Rosenthal Fair Debt Collection Practices Act allegations based on those theories also fail.

### 4. Open Book Account Cause of Action

Vincenzi argues the debt collection complaint's open book account cause of action violated the Rosenthal Fair Debt Collection Practices Act because it misrepresented the character and legal status of her debt. (Citing § 1788.17; 15 U.S.C. § 1692e(2)(A).) She argues the cause of action was "an unlawful attempt to obtain a judgment for a debt predicated on a negotiable promissory note without actually possessing or controlling the instrument." But as we have explained, Vincenzi did not satisfy her burden to show a probability of prevailing on her theory that CKS does not possess or control the promissory note.

13

Vincenzi further contends that under California law "an obligation based on a negotiable promissory note, as in this case, simply cannot be a book account." (Citing *Durkin v. Durkin* (1955) 133 Cal.App.2d 283, 290 (*Durkin*) ["An express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not, as a rule, an open account."].) But *Durkin* predated Code of Civil Procedure section 337a, which states: "The term 'book account' means a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor *arising out of a contract* or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner." (Italics added.) As the italicized language indicates, the definition of a book account contemplates the existence of a book account based on a contract. (See *Parker v. Shell Oil Co.* (1946) 29 Cal.2d 503, 507 ["Sums which become due under an express contract (such as rent under a lease) are not ordinarily treated by the parties as items of an open account," but "may by mutual understanding of the parties become an item in an open account; in such a case the cause of action is upon the account, not under the [contract]."].) Vincenzi's contention that an obligation based on a promissory note cannot be a book account as a matter of law is not supported by the plain language of Code of Civil Procedure section 337a or case authority. She therefore did not satisfy her burden to show a probability of prevailing on her theory that relief on CKS's book account cause of action is precluded by law.[3]

---

[3] Because a book account cause of action based on a contract is not precluded as a matter of law, we also reject Vincenzi's assertion that the book account cause of action

(*Continued*)

14

CKS alleged an open book account cause of action as an alternative theory of relief. A "party may plead in the alternative and may make inconsistent allegations." (*Adams v. Paul* (1995) 11 Cal.4th 583, 593.) As noted by the trial court, the elements of an open book account cause of action are: the existence of a financial relationship between the parties; that the creditor, in the regular course of business, kept an account of the debits and credits involved in the transactions; that the debtor owes money on the account; and evidence showing the amount owed. (See CACI No. 372; *Interstate Group Administrators, Inc. v. Cravens, Dargan & Co.* (1985) 174 Cal.App.3d 700, 708.) The attachments to the debt collection complaint provide support for each of those elements, particularly Exhibit B which shows the transaction history for the loan account. Vincenzi failed to demonstrate a probability of prevailing on her claim that CKS's mere allegation of an open book account cause of action on these facts violated the Rosenthal Fair Debt Collection Practices Act.

## III.    DISPOSITION

The order granting the special motion to strike is affirmed. Costs on appeal are awarded to CKS by operation of California Rules of Court, rule 8.278(a)(1).

---

alleged here is "no different from a debt buyer or debt collector suing to collect a debt that is beyond the applicable statute of limitations."

_____

Grover, Acting P.J.

**WE CONCUR:**

_____

Lie, J.

_____

Bromberg, J.

**H050334**
*Vincenzi v. CKS Prime Investments, LLC*